415 F.2d 713
 ARKANSAS VALLEY INDUSTRIES, INC., Ralston Purina Company and
Tyson's Foods, Inc., Petitioners,
v.
Orville L. FREEMAN, Secretary of Agriculture, United States
Department of Agriculture, and United States of
America, Respondents.
 No. 19204.
 United States Court of Appeals Eighth Circuit.
 July 30, 1969.
 
 J. A. Fraser, St. Louis, Mo., J. Gaston Williamson, Little Rock, Ark., and H. Franklin Waters, Springdale, Ark., for petitioners.
 Raymond W. Fullerton, Atty., Dept. of Agriculture, Washington, D.C., for respondents, Neil Brooks, Asst. Gen. Counsel, Dept. of Agriculture, Edwin L. Weisl, Jr., Asst. Atty. Gen., and Kathryn H. Baldwin, Atty., Dept. of Justice, Washington, D.C., on the brief.
 Before MEHAFFY and HEANEY, Circuit Judges, and HARPER, Chief District judge.
 MEHAFFY, Circuit Judge.
 
 
 1
 This appeal seeks a review of a decision and order of the Judicial Officer acting for the Secretary of Agriculture of the United States. This decision resulted from a complaint filed by the Director of the Packers and Stockyards Division before the Secretary of Agriculture, coupled with a notice of hearing and protracted evidentiary hearings. The complaint charged petitioners, Arkansas Valley Industries, Inc., Ralston Purina Company and Tyson's Foods, Inc., with violation of the provisions of 202(a), 202(b) and 202(g) of the Packers and Stockyards Act, said sections being compiled as 7 U.S.C. 192(a), 192(b) and 192(g). Specifically, the complaint charged, and the Department's Judicial Officer found, that petitioners were 'live poultry dealers or handlers,' and that as such they had boycotted, blacklisted and refrained from entering into or continuing 'grow-out contracts' with certain broiler growers who were active members of the Northwest Poultry Growers Association, a group of broiler growers organized to further the mutual interests of its members, and that such action violated the aforementioned statutory provisions.
 
 
 2
 The Department's Judicial Officer entered a cease and desist order relative to such practices and the decision and order are reported in 27 Agr.Dec. 84.
 
 
 3
 A number of issues were raised in the disciplinary proceeding, but we are met at the threshold with the jurisdictional question of whether the Secretary had the authority to file the complaint, conduct the hearings thereon, and enter a cease and desist order against petitioners as live poultry dealers and handlers when the statute itself does not specifically vest such authority in the Secretary. The section of the statute providing this machinery is, by its language, applicable only to 'packers'; yet the Judicial Officer found that, based on rules of statutory construction, the sense of the law requires the interpolation of the words 'or any live poultry dealer or handler' into the section. For the reasons hereafter stated, we are convinced, not only by the plain and unambiguous language employed by Congress but by the history of the Packers and Stockyards Act and the amendments thereto, that the Act as written clearly expresses the full intention of the Congress.
 
 
 4
 Section 203 of the Act, 7 U.S.C. 193, provides the procedure and authority for filing a complaint, notice of hearing and a hearing upon the complaint. This section also authorizes the issuance of a cease and desist order and it is applicable only to 'packers' and does not include live poultry dealers or handlers. Also applicable to packers only is the procedure for appeal from the order of the Secretary as set out in 204 of the Act, 7 U.S.C. 194, as well as 205 of the Act, 7 U.S.C. 195, which provides for punishment for violation of the order of the Secretary.[1]
 
 
 5
 It is thus seen that the three provisions of the Act, being the only ones authorizing the Secretary to enter a cease and desist order, providing for an appeal therefrom and providing punishment for violation of the order, are by their plain language applicable only to packers and packers alone.
 
 
 6
 Petitioners here are not packers and it is not alleged in the complaint, nor is it contended in brief or argument, that they are packers. It is alleged that they are 'live poultry dealers or handlers' which the Judicial Officer correctly found them to be. The Congress defined 'packer' in 201 of the Act, 7 U.S.C. 191, which was originally passed in 1921, and that congressional definition remains intact even though the Act has been amended in other respects.[2]
 
 
 7
 The 1935 amendment to 202 of the Act, 7 U.S.C. 192, did include poultry dealers and handlers along with packers in the enumeration of unlawful practices, but nowhere in the Act or the amendments thereto has the Secretary been authorized to proceed against live poultry dealers in the manner utilized here which is applicable solely to packers. For example, 203 (7 U.S.C. 193) reads 'Whenever the Secretary has reason to believe that any packer has violated or is violating any provisions of sections 191-195 of this title, he shall cause a complaint in writing to be served upon the packer * * *'; 204 (7 U.S.C. 194) reads 'An order made under section 193 of this title shall be final and conclusive unless within thirty days after service the packer appeals * * *'; and 205 (7 U.S.C. 195) reads 'Any packer, or any officer, director, agent, or employee of a packer, who fails to obey any order of the Secretary issued under the provisions of section 193 of this title * * *', etc. and fixes the punishment for the violation of the order.
 
 
 8
 Despite the congressional definition of 'packer' and Congress' failure to include live poultry dealers or handlers within the scope of the machinery allowing prosecutions, hearings and cease and desist orders, the Secretary's Judicial Officer attributes this to an oversight and inadvertence on the part of the Congress, enabling the Department to read words into the Act which are not there. In his conclusions, the Judicial Officer stated:
 
 
 9
 'With the prohibitions of section 202 applicable to live poultry dealers or handlers who are not licensees under Title V, we cannot believe that Congress intended to make the prohibited conduct on the part of live poultry dealers or handlers unlawful without providing a sanction therefor. The failure to specifically amend sections 203 and 204 to include live poultry dealers or handlers appears then as due to oversight or inadvertence. 'Under the circumstances then it is permissible to read into sections 203 and 204 'live poultry handler or dealer.' Courts will not hesitate to turn into the sense of some section or provision a qualifying or expanding expression plainly implied by the general context of the act, which has been palpably omitted and which is necessary to prevent a legislative purpose from failing in one of its material aspects. Elizabeth Arden Sales Corp. v. Gus Blass Co., 150 F.2d 988, 992-993 (161 A.L.R. 370) (8th Cir.1945), cert. denied 326 U.S. 773 (66 S.Ct. 231, 90 L.Ed. 467) (1945).'
 
 
 10
 The Judicial Officer's concern with Congress' failure to provide a sanction for unlawful acts is erroneously premised. The Attorney General and the Department of Justice are available to the Department of Agriculture to bring such actions as this if the same is warranted. 28 U.S.C. 516 provides:
 
 
 11
 '516. Conduct of litigation reserved to Department of Justice 'Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.'
 
 
 12
 See also F.T.C. v. Guignon, 390 F.2d 323 (8th Cir.1968).
 
 
 13
 Additional to the authority of the Attorney General to represent the various governmental departments and agencies, the Packers and Stockyards Act provides in 7 U.S.C. 224 the following:
 
 
 14
 '224. Attorney General to institute court proceedings for enforcement 'The Secretary may report any violation of this chapter to the Attorney General of the United States, who shall cause appropriate proceedings to be commenced and prosecuted in the proper courts of the United States without delay.'
 
 
 15
 The above provision of the Act was included in the 1935 amendment to the original Act, which amendment incorporated in 202 (7 U.S.C. 192) of the Act the language 'or any live poultry dealer or handler' along with 'packer' in the unlawful practices enumerated.
 
 
 16
 Even beyond this authority for sanctions 501 and 502 of the Act (7 U.S.C. 218 and 218a.) authorizes the Secretary to designate cities and markets where unfair practices exist and to require licenses from the Secretary in order to engage in the business of handling and dealing in live poultry and provides for a penalty for engaging in such dealing without a license. Further, the section empowers the Secretary to deny such a license to any applicant upon a finding that the applicant at any time within two years prior to his application engaged in any practice of the character prohibited by this chapter. Section 505 (7 U.S.C. 218d.) also empowers the Secretary, after hearing, to suspend a license for violation of the Act.
 
 
 17
 Thus, it is apparent that the Department of Agriculture and the Secretary thereof have great and extensive control through licensing procedure to apply near fatal sanctions to live poultry dealers for noncompliance with the Act even though Congress did not authorize the procedure for issuing cease and desist orders applicable only to packers.
 
 
 18
 We are convinced from the plain language of the statute that Congress knew what it was doing and there was no inadvertence or oversight on its part when it made the three sections of the Act relating to cease and desist orders applicable to packers only. Of course, when the provisions of an act are clear and unequivocal, there is no need to resort to general rules of statutory construction. Callanan v. United States, 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); Northwest Paper Co. v. Federal Power Commission, 344 F.2d 47, 50 (8th Cir.1965); United States v. Martin, 337 F.2d 171 (8th Cir. 1964); Kansas City, Mo. v. Fed. Pac.Elect. Co., 310 F.2d 271, 273-274 (8th Cir.1962), cert. denied, 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171 (1962), 373 U.S. 914, 83 S.Ct. 1297, 10 L.Ed.2d 415 (1963). Neither is there any need to resort to the legislative history of the Act. United States, Trustee v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961).
 
 
 19
 Nevertheless, while we think there is no reason to resort to the many rules of statutory construction so vigorously argued by respondents due to the plain language of the statute, in recognition of the importance of this case and the fact that the issue here is one of first impression, we do explore the path of the 1935 amendment through the Congress which clearly reveals to us that it was the intention of the Congress with respect to the provisions of the statute here involved dealing with the machinery for the issuance of a complaint, conduct of hearings and the entering of cease and desist orders that they should apply to packers only. It is a serious matter to invest an agency of the Government with power to act as the prosecutor as well as to sit in judgment upon an accused. The Congress, of course, has the power to grant such authority and has utilized it in instances such as the authority granted to the National Labor Relations Board. But it is equally as serious a business for an administrative agency, or a court for that matter, to assume to interpolate words into a statute when the Congress has not seen fit to use such words itself. This is particularly true in the instance here as Congress fashioned its own definition for the word 'packer' in the original 1921 Act and has never seen fit to change it by any subsequent amendment to the Act. The courts are not at liberty to add to or deviate from words in a statute and thus thrust the court's will, or that of an administrative agency, upon the Congress where the same is not necessary to avoid an absurdity or frustrate the meaning or purpose of the statute. See and compare United States v. Great Northern Ry. Co., 343 U.S. 562, 575, 72 S.Ct. 985, 96 L.Ed. 1142 (1952); 62 Cases, etc., of Jam v. United States, 340 U.S. 593, 600, 71 S.Ct. 515, 95 L.Ed. 566 (1961); Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930); United States v. Martin, supra; Commissioner of Internal Revenue v. Mercantile Nat. Bank at Dallas, 276 F.2d 58, 62 (5th Cir.1960); Fisher Flouring Mills Co. v. United States, 270 F.2d 27, 32 (9th Cir.1958); Christner v. Poudre Valley Co-op. Ass'n, 235 F.2d 946, 950 (10th Cir.1956); De Soto Securities Co. v. Commissioner of Internal Revenue, 235 F.2d 409, 411 (7th Cir. 1956); Hatfried, Inc. v. Commissioner of Internal Revenue, 162 F.2d 628, 631 (3rd Cir.1947); Fides, A.G. v. Commissioner of Internal Revenue, 137 F.2d 731, 734 (4th Cir.1943), cert. denied, 320 U.S. 816, 64 S.Ct. 436, 88 L.Ed. 493 (1944); Girard Inv. Co. v. Commissioner of Internal Revenue, 122 F.2d 843, 845-846 (3rd Cir.1941), cert. denied, 314 U.S. 699, 62 S.Ct. 479, 86 L.Ed. 559 (1942).
 
 
 20
 It is significant to note that in 1934 Senate Bill 2246 was introduced to amend the Act, and the proposed bill as written would have accomplished exactly what respondents now desire to effect by way of judicial interpretation, as the original 1934 bill would have amended 202, 203, 204, 205, 401 and 403 of the Act by adding the words 'or poultry dealer' after the word 'packer' whenever it occurred in the mentioned sections. 78 Cong.Rec. pt. 1 at 457, 73rd Cong., 2nd Sess. (1934). This bill was referred to the Senate Committee on Agriculture and Forestry but was reported out of that committee with an amendment in the nature of a substitute and the substituted bill deleted 203, 204 and 205 of the Act from the list of sections to be amended to make them applicable to poultry dealers. This substituted bill with the deletions was passed by the Senate (78 Cong.Rec. pt. 10 at 11308, 73rd Cong., 2nd Sess. (1934)) but was not enacted at that session of the Congress. It was introduced in substituted form during the first session of the 74th Congress, however, and enacted into law August 4, 1935 (49 Stat. 648-649). This amended bill constitutes Title 5 of the Packers and Stockyards Act, and is compiled as 7 U.S.C. 218-218d. The first sentence of 503 (omitted from 218b. of the compilation) provides:
 
 
 21
 'Sections 202, 401, 402, 403, and 404 of said Act are amended by the addition of the words 'or any live poultry dealer or handler' after the word 'packer' wherever it appears in said sections.'
 
 
 22
 Thus, the intention of Congress to make 203, 204 and 205 applicable solely to packers could hardly be plainer, since the congressional committee specifically considered and rejected the proposal to make these sections applicable to live poultry dealers or handlers. A contrary interpretation would in effect convict the Congress of ignorance as to what it was doing. Certainly under these circumstances the addition of the words 'or any live poultry dealer or handler' into the three sections of the Act in fifteen different places when Congress specifically rejected the original bill which would have accomplished this is not warranted and, in fact, would transcend the authority of the court.
 
 
 23
 In United States v. Great Northern Ry. Co., supra, the Supreme Court said (343 U.S. at 575, 72 S.Ct. at 993):
 
 
 24
 'Congress could well have prohibited the Commission from considering financial needs in issuing any order under Section 15(3). This was proposed in one bill and expressly rejected by a congressional committee. * * * It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written. Where, as here, the Commission did not establish through routes, Section 15(4) has no application.
 
 
 25
 In 62 Cases, etc., of Jam v. United States, supra, Mr. Justice Frankfurter, speaking for the Court, said (340 U.S. at 600, 71 S.Ct. at 520):
 
 
 26
 'In our anxiety to effectuate the congressional purpose of protecting the public, we must take care not to extend the scope of the statute beyond the point where Congress indicated it would stop.'
 
 
 27
 At page 596, 71 S.Ct. at page 518, the Court further stated: 'After all, Congress expresses its purpose by words. It is for us to ascertain-- neither to add nor to subtract, neither to delete nor to distort.'
 
 
 28
 We cannot agree with respondents' strong and vigorous argument that the statute should be read as if the deleted words were in it because the statute as written leads to futile results in that it leaves no statutory authority for administrative enforcement against live poultry dealers or handlers who violate 202 of the Act. This argument ignores the authority of the Attorney General to take action as well as the authority vested in the Department of Agriculture under the licensing provisions of the statute.
 
 
 29
 We think it is also significant that the 1958 amendment delineating the areas of jurisdiction of the Federal Trade Commission and the Department of Agriculture over packers and poultry dealers did not in any manner change the congressional definition of packer or in any wise change the language in the provisions of the Act respecting the procedure for the issuance of complaints, notice and conduct of hearings and the issuance of cease and desist orders.
 
 
 30
 Having concluded that the Department had no jurisdiction to proceed against petitioners under 203, 204 and 205 of the Act, since they are live poultry dealers and handlers and not packers, it is unnecessary to engage in a discussion of the several other issues presented on this appeal.
 
 
 31
 The decision and order of the Secretary of Agriculture are set aside.
 
 
 
 [1]
 Sections 203, 204 and 205 of the Act, 7 U.S.C. 193, 194 and 195, provide:
 '193. Procedure before Secretary for violations; complaint; hearing; intervention; report and order; service of process '(a) Whenever the Secretary has reason to believe that any packer has violated or is violating any provision of sections 191-- 195 of this title, he shall cause a complaint in writing to be served upon the packer, stating his charges in that respect, and requiring the packer to attend and testify at a hearing at a time and place designated therein, at least thirty days after the service of such complaint; and at such time and place there shall be afforded the packer a reasonable opportunity to be informed as to the evidence introduced against him (including the right of cross-examination), and to be heard in person or by counsel and through witnesses, under such regulations as the Secretary may prescribe. Any person for good cause shown may on application be allowed by the Secretary to intervene in such proceeding, and appear in person or by counsel. At any time prior to the close of the hearing the Secretary may amend the complaint; but in case of any amendment adding new charges the hearing shall, on the request of the packer, be adjourned for a period not exceeding fifteen days. '(b) If, after such hearing, the Secretary finds that the packer has violated or is violating any provisions of sections 191-- 195 of this title covered by the charges, he shall make a report in writing in which he shall state his findings as to the facts, and shall issue and cause to be served on the packer an order requiring such packer to cease and desist from continuing such violation. The testimony taken at the hearing shall be reduced to writing and filed in the records of the Department of Agriculture. ' (c) Until the record in such hearing has been filed in a court of appeals of the United States, as provided in section 194 of this title, the Secretary at any time, upon such notice and in such manner as he deems proper, but only after reasonable opportunity to the packer to be heard, may amend or set aside the report or order, in whole or in part. '(d) Complaints, orders, and other processes of the Secretary under this section may be served in the same manner as provided in section 45 of Title 15. '194. Conclusiveness of order; appeal and review; temporary and final injunction '(a) An order made under section 193 of this title shall be final and conclusive unless within thirty days after service the packer appeals to the court of appeals for the circuit in which he has his principal place of business, by filing with the clerk of such court a written petition praying that the Secretary's order be set aside or modified in the manner stated in the petition, together with a bond in such sum as the court may determine, conditioned that such packer will pay the costs of the proceedings if the court so directs. '(c) At any time after such petition is filed, the court, on application of the Secretary, may issue a temporary injunction, restraining, to the extent it deems proper, the packer and his officers, directors, agents, and employees, from violating any of the provisions of the order pending the final determination of the appeal. ' (e) The court may affirm, modify, or set aside the order of the Secretary. '(g) If the court of appeals affirms or modifies the order of the Secretary, its decree shall operate as an injunction to restrain the packer, and his officers, directors, agents, and employees from violating the provisions of such order or such order as modified. ' (h) The court of appeals shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to review, and to affirm, set aside, or modify, such orders of the Secretary, and the decree of such court shall be final except that it shall be subject to review by the Supreme Court of the United States upon certiorari, as provided in section 1254 of Title 28, if such writ is duly applied for within sixty days after entry of the decree. The issue of such writ shall not operate as a stay of the decree of the court of appeals, insofar as such decree operates as an injunction unless so ordered by the Supreme Court. '195. Punishment for violation of order 'Any packer, or any officer, director, agent, or employee of a packer, who fails to obey any order of the Secretary issued under the provisions of section 193 of this title, or such order as modified-- '(3) After such order, or such order as modified, has been sustained by the courts as provided in section 194 of this title; shall on conviction be fined not less than $500 nor more than $10,000, or imprisoned for not less than six months nor more than five years, or both. Each day during which such failure continues shall be deemed a separate offense.'
 
 
 [2]
 Section 201 of the Act, 7 U.S.C. 191, provides:
 '191. 'Packer' defined 'When used in this chapter-- 'The term 'packer' means any person engaged in the business (a) of buying livestock in commerce for purposes of slaughter, or (b) of manufacturing or preparing meats or meat food products for sale or shipment in commerce, or (c) of manufacturing or preparing livestock products for sale or shipment in commerce, or (d) of marketing meats, meat food products, livestock products, dairy products, poultry, poultry products, or eggs, in commerce; but no person engaged in such business of manufacturing or preparing livestock products or in such marketing business shall be considered a packer unless-- '(1) Such person is also engaged in any business referred to in clause (a) or (b) of this section, or unless '(2) Such person owns or controls, directly or indirectly, through stock ownership or control or otherwise, by himself or through his agents, servants, or employees, any interest in any business referred to in clause (a) or (b) of this section, or unless '(3) Any interest in such business of manufacturing or preparing livestock products, or in such marketing business is owned or controlled, directly or indirectly, through stock ownership or control or otherwise, by himself or through his agents, servants, or employees, by any person engaged in any business referred to in clause (a) or (b) of this section, or unless '(4) Any person or persons jointly or severally, directly or indirectly, through stock ownership or control or otherwise, by themselves or through their agents, servants, or employees, own or control in the aggregate 20 per centum or more of the voting power or control in such business of manufacturing or preparing livestock products, or in such marketing business and also 20 per centum or more of such power or control in any business referred to in clause (a) or (b) of this section.'