## CALLANAN *v.* UNITED STATES.

No. 47. Argued November 15–16, 1960.—Decided January 9, 1961.

*Morris A. Shenker* and *Sidney M. Glazer* argued the cause and filed a brief for petitioner.

*Theodore George Gilinsky* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey* and *Beatrice Rosenberg.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Petitioner was convicted by a jury in the United States District Court for the Eastern District of Missouri on two counts. Count I charged a conspiracy to obstruct commerce by extorting money, and Count II charged the substantive offense of obstructing commerce by extortion, both crimes made punishable by the Hobbs Anti-Rack-

eteering Act, 18 U. S. C. § 1951.[1] Petitioner was sentenced to consecutive terms of twelve years on each count, but the sentence on Count II was suspended and replaced with a five-year probation to commence at the expiration of his sentence under Count I.[2] On appeal, the conviction was affirmed, 223 F. 2d 171.

Petitioner thereafter sought a correction of his sentence, invoking Rule 35 of the Federal Rules of Criminal

---

[1] Section 1951 (a) is as follows:

"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

The pertinent parts of the Hobbs Act Amendments of 1946, 60 Stat. 420, from which the 1948 codification was compiled, were as follows:

"Sec. 2. Whoever in any way or degree obstructs, delays, or affects commerce, or the movement of any article or commodity in commerce, by robbery or extortion, shall be guilty of a felony.

"Sec. 3. Whoever conspires with another or with others, or acts in concert with another or with others to do anything in violation of section 2 shall be guilty of a felony.

"Sec. 4. Whoever attempts or participates in an attempt to do anything in violation of section 2 shall be guilty of a felony.

"Sec. 5. Whoever commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of section 2 shall be guilty of a felony.

"Sec. 6. Whoever violates any section of this title shall, upon conviction thereof, be punished by imprisonment for not more than twenty years or by a fine of not more than $10,000, or both."

The Reviser's Note to the 1948 Code states that "The words 'attempts or conspires so to do' were substituted for sections 3 and 4 of the 1946 act, . . ."

[2] Petitioner was released from imprisonment in April 1960 and currently is on parole. Both parties and the courts below apparently have interpreted the probationary period for Count II to commence at the expiration of petitioner's parole for Count I.

Procedure as well as 28 U. S. C. § 2255.[3]   He claimed that the maximum penalty for obstructing interstate commerce under the Act by any means is twenty years and that Congress did not intend to subject individuals to two penalties.   The District Court denied relief, holding that the Hobbs Act gave no indication of a departure from the usual rule that a conspiracy and the substantive crime which was its object may be cumulatively punished.   173 F. Supp. 98.   The Court of Appeals for the Eighth Circuit affirmed this judgment, 274 F. 2d 601.   Deeming the question raised by petitioner of sufficient importance, we brought the case here.   362 U. S. 939.

Under the early common law, a conspiracy—which constituted a misdemeanor—was said to merge with the completed felony which was its object.   See *Commonwealth* v. *Kingsbury,* 5 Mass. 106.   This rule, however, was based upon significant procedural distinctions between misdemeanors and felonies.   The defendant in a misdemeanor trial was entitled to counsel and a copy of the indictment; these advantages were unavailable on trial for a felony. *King* v. *Westbeer,* 1 Leach 12, 15, 168 Eng. Rep. 108, 110 (1739); see Clark and Marshall, Crimes, § 2.03, n. 96 (6th ed.).   Therefore no conviction was permitted of a constituent misdemeanor upon an indictment for the felony.   When the substantive crime was also a misdemeanor, *People* v. *Mather,* 4 Wend. 229, 265 (N. Y.), or when the conspiracy was defined by statute as a felony, *State* v. *Mayberry,* 48 Me. 218, 238, merger did not obtain. As these common-law procedural niceties disappeared, the

---

[3] Both courts below ruled that 28 U. S. C. § 2255 was not available since it would be premature to claim the "right to be released" from a sentence not yet served.   Since, as the Government concedes, Rule 35 is available to correct an illegal sentence when the claim is based on the face of the indictment even if such claim had not been raised on direct appeal, *Heflin* v. *United States,* 358 U. S. 415, 418, 422, the applicability of § 2255 need not be considered.

merger concept lost significance, and today it has been abandoned. *Queen* v. *Button,* 11 Q. B. 929, 116 Eng. Rep. 720; *Pinkerton* v. *United States,* 328 U. S. 640.

Petitioner does not draw on this archaic law of merger. He argues that Congress by combining the conspiracy and the substantive offense in one provision, § 1951, manifested an intent not to punish commission of two offenses cumulatively. · Unlike the merger doctrine, petitioner's position does not question that the Government could charge a conspiracy even when the substantive crime that was its object had been completed. His concern is with the punitive consequences of the choice thus open to the Government; it can indict for both or either offense, but, petitioner contends, it can punish only for one.

The present Hobbs Act had as its antecedent the Anti-Racketeering Act of 1934.[4]  In view of this Court's restric-

---

[4] The original bill, S. 2248, 73d Cong., 2d Sess., did not contain any provision concerning conspiracy. (Of course, the general conspiracy statute, R. S. § 5440, now 18 U. S. C. § 371, which then provided for a maximum two-year sentence, was available.) The bill made punishable by imprisonment from one to ninety-nine years acts of violence, extortion, and coercion which interfered with interstate commerce. 78 Cong. Rec. 11403. The purpose of the legislation was to provide for direct prosecution of large-scale racketeering, which formerly had been ineffectively attempted through the Sherman Act, which had a maximum penalty of one-year imprisonment or $5,000 fine. S. Rep. No. 532, 73d Cong., 2d Sess. p. 1. After the bill had passed the Senate, 78 Cong. Rec. 5735, some question was raised as to whether legitimate labor activity was not threatened by the statutory phraseology, 78 Cong. Rec. 5859, 10867, and provisos were suggested by the House Judiciary Committee in reporting the measure to the full body. H. R. Rep. No. 1833, 73d Cong., 2d Sess. The Committee, upon the suggestion of the Attorney General, further added a section making conspiracy to commit any of the designated substantive violations punishable. *Ibid.* The amended bill was passed by the House substantially as reported except that the penalty was decreased to ten years or $10,000. 78 Cong. Rec. 11403. The House bill was summarily approved by the Senate. 78 Cong. Rec. 11482.

tive decision in *United States* v. *Local 807*, 315 U. S. 521 (1942), Congress, under the leadership of Representative Hobbs, sought to stiffen the 1934 legislation. After several unsuccessful attempts over a period of four years, a bill was passed in 1946 which deleted any reference to wages paid by an employer to an employee, on which the decision in *Local 807* had relied.[5] The 1934 Act was further invigorated by increasing the maximum penalty from ten to twenty years.

Petitioner relies on numerous statements by members of Congress concerning the severity of the twenty-year penalty to illustrate that cumulative sentences were not

---

[5] A little over two months after the decision, H. R. 7067 was introduced by Representative Hobbs in the House of Representatives, 88 Cong. Rec. 4080, following Hearings before a Subcommittee of the Committee on the Judiciary, 77th Cong., 2d Sess. The bill was reported favorably out of committee, the only major change being the reduction of the proposed twenty-year maximum sentence to ten years. In discussing the various provisions, the report stated: "The objective of Title I is to prevent anyone from obstructing, delaying, or affecting commerce, or the movement of any article or commodity in commerce by robbery or extortion as defined in the bill. A conspiracy or attempt to do anything in violation of section 2 is likewise made punishable . . . ." H. R. Rep. No. 2176, 77th Cong., 2d Sess., p. 9. No further congressional action was taken on the bill.

The following year, Representative Hobbs introduced H. R. 653 which was identical with his prior bill. This time the Committee did not amend the twenty-year penalty. H. R. Rep. No. 66, 78th Cong., 1st Sess. The measure passed the House, 89 Cong. Rec. 3230, but no action was taken in the Senate.

In 1945 Representative Hobbs again introduced his amendment. H. R. 32, 79th Cong., 1st Sess. The measure was passed by both bodies, 91 Cong. Rec. 11922, 92 Cong. Rec. 7308. Both Committee reports again stated that "A conspiracy or attempt to do anything in violation of section 2 is likewise made punishable." S. Rep. No. 1516, 79th Cong., 2d Sess.; H. R. Rep. No. 238, 79th Cong., 1st Sess., p. 9.

The pertinent parts of the amendment, 60 Stat. 420, are set out in n. 1, *supra*.

contemplated.[6]    But the legislative history sheds no light whatever on whether the Congressmen were discussing the question of potential sentences under the whole bill or merely defending the maximum punishment under its

[6] Typical excerpts on which petitioner relies are:

"Mr. DELANEY. The fact of the matter is that this committee report was not unanimous.  Also, in the committee it was indicated by those who favor this legislation that the legislation is too drastic, that the $10,000 fine and 20 years in jail is too drastic.  They think a modified bill might be more in consonance with present-day thinking."  (89 Cong. Rec. 3162.)

.              .              .              .

"Mr. FISH. . . . I want to refer likewise to some of the excessive penalties.  The penalties in this bill in my opinion are too severe—20 years and $10,000 fine.  When we reach this section of the bill there should be very careful consideration given to reducing both the extent of the imprisonment and fines."  (89 Cong. Rec. 3194.)

.         .         .         .         .

"Mr. SPRINGER. May I ask my distinguished colleague on the Committee on the Judiciary if it is not a fact that under the provisions of this bill the question of penalty is left entirely discretionary with the court trying the case?  Under the provisions of this bill a person could be penalized to the extent of 1 year or less than 1 year or up to 20 years, all in the discretion of the court.

"Mr. CELLER. Or his sentence might be suspended.  I agree with the gentleman.  But why do we single out labor and impose even a possible penalty of 20 years?"  (89 Cong. Rec. 3201.)

.         .         .         .

"Mr. ROBSION. . . . There is some objection to the penalties prescribed in this bill for robbery and extortion.  It has gone forth to the country that the penalty is 20 years.  That is not a correct statement.  The penalties range from 1 hour up to 20 years, according to the offense, and fines of $1 to $10,000.  In other words, the 20 years and the $10,000 fine are the maximum."  (89 Cong. Rec. 3226.)

.         .         .         .

"Mr. FISH. . . . When the bill was before the Rules Committee it seemed to me at that time that these penalties were excessive.  Twenty years is just about as bad as a life sentence, and I want to give the House the opportunity to reduce it by cutting it in half.  This applies to threats.  A man may be sent to jail for 20 years merely for threatening extortion."  (89 Cong. Rec. 3229.)

specific sections. All the legislative talk only reiterates what the statute itself says—that the maximum penalty is twenty years.

The distinctiveness between a substantive offense and a conspiracy to commit is a postulate of our law. "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton* v. *United States,* 328 U. S. 640, 643. See also *Pereira* v. *United States,* 347 U. S. 1, 11. Over the years, this distinction has been applied in various situations. For example, in *Clune* v. *United States,* 159 U. S. 590, the Court upheld a two-year sentence for conspiracy over the objection that the crime which was the object of the unlawful agreement could only be punished by a $100 fine. The same result was reached when, as in the present case, both offenses were described within the same statute. In *Carter* v. *McClaughry,* 183 U. S. 365, cumulative sentences for conspiracy to defraud and fraud were upheld. "Cumulative sentences," the Court pronounced, "are not cumulative punishments, and a single sentence for several offences, in excess of that prescribed for one offence, may be authorized by statute." 183 U. S., at 394.

This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime

makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.[7]

These considerations are the presuppositions of the separately defined crimes in § 1951. The punitive consequences that presumably flow from them must be placed in such context. Congress is, after all, not a body of laymen unfamiliar with the commonplaces of our law. This legislation was the formulation of the two Judiciary Committees, all of whom are lawyers, and the Congress is predominately a lawyers' body. We attribute "to Congress a tacit purpose—in the absence of any inconsistent expression—to maintain a long-established distinction between offenses essentially different; a distinction whose practical importance in the criminal law is not easily overestimated." *United States* v. *Rabinowich,* 238 U. S. 78, 88.

These considerations are reinforced by a prior interpretation of the Sherman Act whose minor penalties influenced the enactment of the 1934 anti-racketeering legislation.[8] In *American Tobacco Co.* v. *United States,* 328

---

[7] For a discussion of these problems of the law of conspiracy see Developments in the Law—Criminal Conspiracy, 72 Harv. L. Rev. 920, 922–925, 968–971.

[8] The Senate Report which accompanied the original 1934 legislation described the purpose of the Act by setting forth a memorandum received from the Justice Department:

". . . The nearest approach to prosecution of racketeers as such has been under the Sherman Antitrust Act. This act, however, was designed primarily to prevent and punish capitalistic combinations and monopolies, and because of the many limitations engrafted upon the act by interpretations of the courts, the act is not well suited for prosecution of persons who commit acts of violence, intimidation, and extortion. . . . Moreover, a violation of the Sherman Act is merely a misdemeanor, punishable by 1 year in jail plus $5,000 fine, which is

U. S. 781, individual and corporate defendants were convicted, *inter alia,* of conspiracy to monopolize and monopolization, both made criminal by § 2. They were sentenced to a fine of $5,000, the maximum statutory penalty, on each of the counts. We affirmed these convictions on the basis of our past decisions in this field of law. 328 U. S., at 788–789. To dislodge such conventional consequences in the outlawing of two disparate offenses, conspiracy and substantive conduct, and effectuate a reversal of the settled interpretation we pronounced in *American Tobacco* would require specific language to the contrary. See also *Albrecht* v. *United States,* 273 U. S. 1, 11; *Burton* v. *United States,* 202 U. S. 344, 377.

Petitioner argues that some of the other provisions of § 1951 seem to overlap and would not justify cumulative punishment for separate crimes. From this he deduces a congressional intent that the statute allows punishment for only one crime no matter how many separately outlawed offenses have been committed. These contentions raise problems of statutory interpretation not now here. That some of the substantive sections may be repetitive as being variants in phrasing of the same delict, or that petitioner could not be cumulatively punished for both an attempt to extort and a completed act of extortion, has no relevance to the legal consequences of two incontestably distinctive offenses, conspiracy and the completed crime

---

not a sufficient penalty for the usual acts of violence and intimidation affecting interstate commerce." S. Rep. No. 532, 73d Cong., 2d Sess., p. 1.

Representative Celler, in arguing for a less severe penalty during the 1945 debates, said:

"If you look at the antitrust penalties against employers you find that they are only $5,000 or 1 year in jail. This bill has direct relation to the antitrust laws, the Clayton Act." 91 Cong. Rec. 11902.

See also Representative Celler's remarks during the 1943 debates, 89 Cong. Rec. 3201.

that is its object. In the *American Tobacco* litigation it was decided that the attempt to monopolize, described in § 2 of the Sherman Act, merged with the completed monopolization, but this result did not qualify the holding that cumulative sentences for the conspiracy and the substantive crime, also contained within § 2, were demanded by the governing precepts of our law.

Petitioner invokes "the rule of lenity" for decision in this case. But that "rule," as is true of any guide to statutory construction, only serves as an aid for resolving an ambiguity; it is not to be used to beget one.[9] "To rest upon a formula is a slumber that, prolonged, means death." Mr. Justice Holmes in Collected Legal Papers, p. 306. The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers. That is not the function of the judiciary. In *United States* v. *Universal C. I. T. Credit Corp.*, 344 U. S. 218; *Bell* v. *United States, supra,* and *Ladner* v. *United States,* 358 U. S. 169, the applicable statutory provisions were found to be unclear as to the appropriate unit of prosecution; accordingly, the rule of lenity was utilized, *in favorem libertatis*, to resolve the ambiguity. In *Prince* v. *United States,* 352 U. S. 322, and *Heflin* v. *United States,* 358 U. S. 415, the Court had to meet the problem whether various subsidiary provisions of the Federal Bank Robbery Act, 18 U. S. C. § 2113, which punished entering with intent to commit robbery and possessing stolen property, merged when applied to a defendant who was also being prosecuted for the robbery itself. Again the rule of lenity served to resolve the doubt with which Congress faced the Court.

---

[9] "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell* v. *United States,* 349 U. S. 81, 83.

Here we have no such dubieties within the statute itself. Unlike all of these cases, the problem before us does not involve the appropriate unit of prosecution—whether conduct constitutes one or several violations of a single statutory provision—nor is it an open question whether conspiracy and its substantive aim merge into a single offense. This is an ordinary case of a defendant convicted of violating two separate provisions of a statute, whereby Congress defined two historically distinctive crimes composed of differing components. If petitioner had committed two separate acts of extortion, no one would question that the crimes could be punished by consecutive sentences; the result seems no less clear in the present case. It was therefore within the discretion of the trial judge to fix separate sentences, even though Congress has seen fit to authorize for each of these two offenses what may seem to some to be harsh punishment.

*Affirmed.*

Mr. Justice Stewart, whom The Chief Justice, Mr. Justice Black, and Mr. Justice Douglas join, dissenting.

To be sure, it is now a commonplace of our law that the commission of a substantive crime and a conspiracy to commit it may be treated by Congress as separate offenses, cumulatively punishable. *Pinkerton* v. *United States,* 328 U. S. 640, 643. It is also true that Congress has often chosen to exercise its power to make separate offenses of the two.[1] But neither of these generalities provides an answer to the question now before us. The question here is the meaning of *this* law, the Hobbs Anti-Racketeering Act. I do not agree that under this statute a man can be separately convicted and cumulatively pun-

---

[1] The most notable illustration of this is the General Conspiracy Statute, 18 U. S. C. § 371.

ished for obstructing commerce by extorting money, and for conspiring to obstruct commerce by the same extortion. My view is based both upon the language of the statute and upon its history, considered in the light of principles that have consistently guided this Court's decisions in related areas of federal criminal law.

The relevant section of the Act, repeated for convenience in the margin,[2] is not a model of precise verbal structure. Purely as a matter of syntax, the section could be read as creating separate offenses for obstructing commerce, for delaying commerce, and for affecting commerce by any one of the proscribed means. It could be read, again merely as a matter of grammar, as creating distinct offenses for obstructing commerce by robbery, for threatening physical violence to property in connection with the same robbery, for committing the physical violence which had been threatened, for attempting to do so, and for conspiring to do so. Read in such a way the Act could be made to justify the imposition upon one man of separate sentences totalling more than a hundred years for one basic criminal transaction. To construe this statute that way would obviously be absurd, and I do not understand that the Court today even remotely suggests any such construction.

The Act, then, must mean something else. I think its language can fairly be read as imposing a maximum twenty-year sentence for each actual or threatened interference with interstate commerce accomplished by any one or more of the proscribed means. Such a reading of

---

[2] "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both." 18 U. S. C. § 1951 (a).

the Act does violence neither to semantics nor to common sense. It is fully justified by the legislative history, and it is consistent with settled principles governing the construction of ambiguous criminal statutes. If this is what the Act means, then the indictment in the present case charged but a single offense, and it was wrong to impose two separate sentences upon the petitioner.

The antecedent of the present Act was the Anti-Racketeering Act of 1934. That legislation was originally introduced after extensive hearings before a subcommittee of the Senate Committee on Commerce, popularly known as the Committee on Racketeering. The original bill did not contain any reference to conspiracy. S. 2248, 73d Cong., 2d Sess. The Committee Report consisted of a memorandum from the Department of Justice, stating that the purpose of the bill was to permit prosecution of so-called "racketeers" for acts constituting racketeering. Significantly, the memorandum stated "The accompanying proposed statute is designed to avoid many of the embarrassing limitations in the wording and interpretation of the Sherman Act, and to extend Federal jurisdiction over all restraints of any commerce within the scope of the Federal Government's constitutional powers. Such restraints if accompanied by extortion, violence, coercion, or intimidation, are made felonies, *whether the restraints are in form of conspiracies or not.*" (Emphasis added.) S. Rep. No. 532, 73d Cong., 2d Sess., p. 1.

After the bill had passed the Senate fear was expressed that some of the provisions of the proposed legislation might endanger legitimate activities of organized labor. In response to these fears the bill was revised by the House Judiciary Committee along lines suggested by the Attorney General, and it was then that the statutory reference to conspiracy was added, without explanation. H. R. Rep. No. 1833, 73d Cong., 2d Sess. The bill was passed by the House after adoption of an amendment

reducing the maximum punishment provision to "10 years or by a fine of $10,000 or both." 78 Cong. Rec. 11403. Thereafter, the Senate approved the House bill without debate. 78 Cong. Rec. 11482.

In 1942 this Court considered the 1934 Act in *United States* v. *Local 807*, 315 U. S. 521, holding that under the statute's labor exemption the petitioners there had been wrongly convicted. Within a few weeks after that decision, Representative Hobbs introduced a bill in the House designed to eliminate the labor exemption from the statute. Similar amendatory bills were introduced in succeeding sessions of Congress, and in 1946 the Act was finally amended by deletion of the provision exempting wages paid by an employer to an employee, the exemption upon which the decision in the *Local 807* case had been based.

With that aspect of the 1946 amendment we are not here concerned. But the amendment made one other significant change in the Act: it increased the maximum penalty from ten to twenty years' imprisonment. The congressional debates over that provision throw considerable light upon the problem now before us. For two conclusions can be drawn from a review of the discussions in Congress of the proposed increase in the penalty provision. First, it is clear that many Members of Congress were seriously concerned by the severity of a penalty of twenty years in prison for violation of this statute. Expressions such as "too drastic," "too severe," and "excessive" were used in describing what was referred to by one Member as "even a possible penalty of 20 years." 89 Cong. Rec. 3162, 3194, 3201, 3229. Secondly, it is clear that there was general agreement among both the proponents and the opponents of the legislation that twenty years was to be the maximum penalty that could be imposed upon a defendant convicted of violating the

statute. 89 Cong. Rec. 3226. No one ever suggested that cumulative penalties could be inflicted.

In sum, then, we have here a statute which, as a matter of English language, can fairly be read as imposing a single penalty for each interference or threatened interference with interstate commerce by any or all of the prohibited means. We have evidence stemming from the very origin of the legislation that the unit of prosecution under the statute was to be each restraint of commerce, not each means by which the restraint was accomplished. As the original Senate Committee Report stated, "restraints if accompanied by extortion, violence, coercion, or intimidation, are made felonies, whether the restraints are in form of conspiracies or not." Finally, we have every indication that when the Act was amended in 1946 Congress was agreed that but a single maximum sentence of twenty years could be imposed upon conviction, and that many Members of Congress considered even that penalty far too severe.

It is said, however, that despite all this we must attribute to Congress a "tacit purpose" to provide cumulative punishments for conspiracy and substantive conduct under this statute. We are told that this presumption of a tacit purpose must prevail because there is no "specific language to the contrary" in the Act.[3] But to indulge in such a presumption seems to me wholly at odds with principles firmly established by our previous decisions.

---

[3] The Court's reliance upon *American Tobacco Co.* v. *United States*, 328 U. S. 781, seems to me misplaced. The discussion of multiple punishment in that opinion was in response to the contention that Congress could not, because of the double jeopardy provision of the Fifth Amendment, impose multiple punishment for substantive conduct and conspiracy. Moreover, to decide the meaning of this Act upon the basis of what Congress may have provided in another statute, would seem to me a dubious way to resolve the issue. Cf. *Bell* v. *United States*, 349 U. S. 81, 83.

In *Bell* v. *United States,* 349 U. S. 81, we described the approach to be taken in a case such as this. "When Congress has the will it has no difficulty in expressing it . . . . When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." 349 U. S., at 83. In *Ladner* v. *United States,* 358 U. S. 169, we said: "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." 358 U. S., at 178. In *Prince* v. *United States,* 352 U. S. 322, we spoke of the doctrine as one "of not attributing to Congress, in the enactment of criminal statutes, an intention to punish more severely than the language of its laws clearly imports in the light of pertinent legislative history." 352 U. S., at 329. These recent expressions are but restatements in a specific context of the ancient rule that a criminal statute is to be strictly construed. I would not depart from that rule in the present case.