UNITED STATES

v.

**Senior Airman Douglas L. WOOD, FR 518–58–6056, United States Air Force.**

**ACM S24679.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 20 Oct. 1978.

Decided 11 June 1979.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Wade B. Morrison.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., Captain James R. Van Orsdol, and Lieutenant Colonel Charles B. Lewis, Jr., USAFR.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

DECISION

EARLY, Chief Judge:

Tried by special court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of conspiring to violate a lawful general regulation, and violating the same regulation on two occasions, and contrary to his pleas, of wrongfully inducing another to violate the same general regulation, in violation of Articles 81, 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892 and 934. The sentence adjudged consisted of a bad conduct dis-

charge, confinement at hard labor for five months, forfeiture of $300 per month for five months and reduction to airman. The supervisory authority set aside the finding of guilty of wrongful inducement and approved a sentence extending to a bad conduct discharge, confinement at hard labor for four months, forfeiture of $250.00 per month for four months and reduction to airman.

Appellate defense counsel assign two errors. In the first, they assert:

DUE TO THE APPLICATION OF WHARTON'S RULE, CHARGE I AND ITS SPECIFICATION FAIL TO STATE AN OFFENSE COGNIZABLE UNDER THE UNIFORM CODE OF MILITARY JUSTICE.

We disagree.

The challenged specification alleges that the accused conspired with a Korean national to violate the country blackmarket regulation and, in furtherance of the conspiracy, aided the Korean to purchase duty-free merchandise.

█ In the absence of a legislative pronouncement to the contrary, conspiracy and the completed substantive offense are considered separate crimes. See *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) and cases cited therein. This rationale is grounded on the recognition that a conspiracy poses distinct dangers apart from those of the substantive offense. *Iannelli v. United States*, supra. As was held in *Callahan v. United States*, 364 U.S. 587, 593–4, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961):

This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully

attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if nor normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. . . . Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

This severability is recognized by the Uniform Code.[1]

Wharton's Rule, as first enunciated, was derived from the rule against double jeopardy. See 3 Wharton, Criminal Law § 2321, at 78 (6th ed. 1868); *Shannon v. Commonwealth*, 14 Pa. 226 (1850). However, the Rule, as now stated, provides:

An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission.

1 Anderson, Wharton's Criminal Law and Procedure § 89, at 191 (1957); cited with approval in *Iannelli*, supra, 420 U.S. at 773, 95 S.Ct. 1284, 1292, note 5.

In interpreting the modern application of the Rule, the Supreme Court held:

[The Rule] has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in the commission of the substantive offense, and the immediate consequences of the crime rest

1. See generally Hearings on H.R. 2498, Subcommittee of the Committee on Armed Services, House of Representatives, 81st Cong., 1st Sess., 1224–6 (1949). As noted therein, Article 81, Conspiracy, was derived from 18 U.S.C. § 371, and Article 92, Failure to Obey an Order or Regulation, was derived from Articles Governing the Navy 9(30), 9(19), and Article of War 96. See also *United States v. Washington*, 1 M.J. 473 (C.M.A.1976).

on the parties themselves rather than society at large. . . . Finally, the agreement that attends the substantive offense does not appear likely to pose the distinct threats to society that the law of conspiracy seeks to avert.

\* \* \* \* \* \*

[The] Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents. In such cases, a closer relationship exists between the conspiracy and the substantive offense because *both* require collective criminal activity. The substantive offense therefore presents some of the same threats that the law of conspiracy normally is thought to guard against, and it cannot automatically be assumed that the Legislature intended the conspiracy and the substantive offense to remain as discrete crimes upon consummation of the latter. Thus, absent legislative intent to the contrary, the Rule supports a presumption that the two merge when the substantive offense is proved.

*Iannelli v. United States*, 420 U.S. at 782, 785, 95 S.Ct. at 1292–94 (footnotes omitted).

█ Applying these precepts to the facts of the instant case,[2] it is clear that the conduct proscribed by the regulation controlling blackmarketing is very different from the offenses to which the Rule has been traditionally applied. The societal

harm attendant upon the violation of the regulation is not restricted to the parties to the agreement. The regulation enforces an important United States government obligation under the Status of Forces Agreement (SOFA) with the government of Korea: to minimize and control the unlawful importation of duty-free items into the economy of Korea. The treaty obligation of the United States has impact beyond the violation of the regulation, and the harm attendant upon violation of the regulation affects persons other than the participants in the conspiracy.[3] A pre-existing agreement is not required for the regulation to be violated. Thus, the regulation can be breached by a single individual acting alone if he purchases a controlled item with the intent to resell it to a person, determined or not, who is not authorized to purchase duty-free items. On the other hand, the conspiracy requires the concert of minds of more than one person, and the actions toward the goal of the conspiracy by at least one party to the conspiracy. Thus, here the two offenses are distinct and different both as to conduct prohibited as well as to the number of parties involved or affected.

Remaining for consideration is whether Congress, in enacting the Uniform Code, intended that the two acts alleged here be separately charged and punished. We hold that it did. What is being prosecuted is:

2. Wharton's Rule has been accepted by military law. See *United States v. Yarborough*, 1 U.S.C.M.A. 678, 5 C.M.R. 106 (1952); *United States v. Woolbright*, 30 C.M.R. 488 (A.B.R. 1960); *United States v. McClelland*, 49 C.M.R. 557 (A.C.M.R.1974), pet. denied, 49 C.M.R. 889 (1975).

3. In a well-reasoned decision, published before *Iannelli*, the Army Court concluded:

[C]onspiracy may not be charged . . . . Where: (1) a minimum of two parties is required to reach agreement to exchange illegal drugs, and (2) the agreement is an essential element of the exchange, and (3) the purported conspiracy does not have any additional element of proof not found in the completed substantive offense of transfer of marijuana.

*United States v. McClelland*, 49 C.M.R. 557, 563 (A.C.M.R.1974), pet. denied, 49 C.M.R. 889 (1975).

Although not specifically stated, it appears that the rationale used in *McClelland* is similar to the test set forth in the Manual for Courts-Martial, 1969 (Rev.), paragraph 76a(5), for determining multiplicity. Of course, any conspiracy will have an additional element from the completed substantive offense: the existence of an agreement to commit an illegal act which is the basis of the conspiracy.

Even though the existing law does permit it, and there are instances—such as joint trials involving individuals whose participation in the substantive offense differs—where charging both the conspiracy and the completed substantive offense is necessary, we doubt the utility of charging the conspiracy when the completion of the substantive offense is alleged as the overt act in furtherance thereof.

(1) the conspiracy to knowingly (in concert with another) commit the offense of black-marketing; and, (2) the wrongful violation of a lawful regulation. There are cogent reasons for separate prosecution of both within the legislative intent of the Code. The first connotes an agreement to do that which is lawfully prohibited—blackmarketing—, and the second is a violation of a regulation which amounts to a thwarting of military discipline. Under the circumstances here, Wharton's Rule does not apply.

In their second assignment of error, appellate defense counsel assert:

> THE STAFF JUDGE ADVOCATE'S REVIEW WAS PREJUDICIALLY INADEQUATE IN FAILING TO PROPERLY ADVISE THE CONVENING AUTHORITY OF SENTENCING COMPARISON PRINCIPLES.

Again we disagree.

 Counsels' assertion is based on the fact that on the preceding day the same military judge, sitting alone, sentenced another airman, pursuant to his pleas, tried on similar charges involving the same Korean national, to confinement at hard labor for six months without inclusion of a bad conduct discharge.

In support of their contention, appellate defense counsel cite our holdings in *United States v. Capps*, 1 M.J. 1184 (A.F.C.M.R. 1976) and *United States v. De Los Santos*, 3 M.J. 829 (A.F.C.M.R.1977). In *Capps* while subscribing to the "general policy that appropriateness of a sentence in a case . . . is to be determined on the basis of its own facts and circumstances, not on a comparison with sentences in other cases," we recognized an exception to that policy in situations involving connected or closely related cases with highly disparate sentences. See 1 M.J. at 1187. However, we did not mean to imply that *any* sentence should be compared with *other* sentences imposed for like offenses for the purpose of determining disparity. In both cited cases, the accused were co-actors in the same offense. Here, there is no such similarity; only the same Korean national is involved. That standing alone does not bring the *Capps* rule into play.[4] To the extent that *Capps* may be read for any broader proposition, it is specifically limited herein.[5]

The findings of guilty and the sentences are correct in law and fact and are

AFFIRMED.

HERMAN, ORSER and ARROWOOD, Judges, concur.

---

4. Even if co-actors are involved, the disparity must be significant or there is no need for the convening authority to give consideration in arriving at an appropriate sentence in a given case. *United States v. Sitton*, 4 M.J. 726 (A.F. C.M.R.1977), pet. denied, 5 M.J. 394 (C.M.A. 1978).

5. Obviously there could be many different facts affecting the quantum of punishment adjudged: quality and length of service, number and type of offenses, profits received, mitigating factors, etc. Such variances make sentence comparison a highly inexact task.