UNITED STATES, Appellee,

v.

Specialist Jamie D. NAGLE,
364–78–0501, United States
Army, Appellant.

ACMR 8902137.

U.S. Army Court of Military Review.

13 July 1990.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Patricia D. White, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before KUCERA, GILLEY and GRAY, Appellate Military Judges.

### OPINION OF THE COURT

GILLEY, Judge: *

Pursuant to the appellant's pleas, the military judge found him guilty of conspiracy to commit larceny, larceny (two specifications), and wrongful damage to a private automobile, in violation of Articles 81, 121, and 109, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 909 (1982). Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant urges that the military judge erred by finding that an overt act of breaking a window of a private automobile was properly the subject of a separate offense. We find that the military judge correctly found the offenses separate for findings but that they were multiplicious for sentencing.

The conspiracy arose when the appellant agreed to a plan proposed by a Private J that they watch a Specialist McK, who had bragged to Private J that he had $10,000.00 with him in a briefcase. They agreed at a second meeting that if Specialist McK put his briefcase in his car, they would break into the car, smash a window, and steal the money. Later that night, they looked into Specialist McK's car and saw his briefcase in the passenger's compartment. The appellant took a tire iron from his assigned

* Judge Dewey C. Gilley, Jr. took final action on this case prior to his retirement.

military vehicle, and Private J used it, on appellant's urging, to smash the window. Appellant grabbed the briefcase containing a pistol, and $442.00 in cash, and ran.

 The conspiracy specification alleged the larceny as its object and the breaking into the automobile as one of its overt acts. That act became a separate specification as well.

We observe that the Manual for Courts–Martial, United States, 1984, Part IV, para. 5(c)(8)[hereinafter MCM, 1984] provides that conspiracy is a separate offense from the offense which is the object of the conspiracy and that the object is also separately punishable from the conspiracy.[1] Further, that paragraph provides that the conspired-for offense may be the overt act alleged, but it does not provide that non-object overt acts may be separately punishable. However, we find that an inference that such overt acts are not separately punishable was not the intent of the Manual provision and would be manifestly incorrect both in view of the development of the law of conspiracy as an inchoate offense and based on logic.

The defense's contention ignores the fundamental criterion for conspiracy, "an inchoate offense, the essence of which is an agreement to commit an unlawful act." *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975). Accordingly, American law now treats conspiracy and the completed substantive offense as separate crimes, subject to separate imposition of punishment for each of those two crimes. *Id.* at 777–78, 95 S.Ct. at 1289–90. Contemplation of the reasons why conspiracy is separately punishable assists us here:

This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Callanan v. United States,* 364 U.S. 587, 593–94, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961), *reh'g denied,* 365 U.S. 825, 81 S.Ct. 687, 5 L.Ed.2d 703 (1961).

 Further, the overt act alleged in the specification to show that the conspiracy is ongoing may be the criminal object of the conspiracy, and the "same or other acts in furtherance of the conspiracy are likewise ... attributable to the other [co-conspirators] for the purpose of holding them responsible for the substantive offense" if reasonably foreseeable as a "necessary or natural consequence of the unlawful agreement." *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), *reh'g denied,* 329 U.S. 818, 67 S.Ct. 26, 91 L.Ed. 697 (1946). *See* MCM, 1984, Part IV, para. 5(c).

Other federal courts have held accused subject to separate punishments for the conspiracy and offenses flowing from it. For example, in *United States v. McQuisten,* 795 F.2d 858 (9th Cir.1986), separate punishments were upheld for conspiracy to manufacture methamphetamine and attempt to manufacture methamphetamine. The Court reasoned: "we have several distinct criminal acts. First, there was the

---

1. MCM, 1984, Part IV, para. 5(c)(8) provides: "[a] conspiracy to commit an offense is a separate and distinct offense from the offense which is the object of the conspiracy, and both the conspiracy and the consummated offense which was its object may be charged, tried, and punished. The commission of the intended offense may also constitute the overt act which is an element of the conspiracy to commit that offense."

conspiracy. That was followed by a number of separate transactions and events involving different people at various locations over a number of months." *Id.* at 868. More poignantly, in *Banghart v. United States,* 148 F.2d 521 (4th Cir.), *cert. denied,* 325 U.S. 887, 65 S.Ct. 1568, 89 L.Ed. 2001 (1945), the court upheld conviction and punishment on separate counts an indictment alleging conspiracy to rob mail, four counts of robbery of the mail, and injury to mailbags with intent to steal mail. The court observed that injury of the mailbags has different elements from robbery of the mail, and that both are separate and distinct from the conspiracy. *Id.* at 521–22.

That court also applied the law of multiplicity as we have it in Rule for Courts–Martial 907(b)(3)(B). *See United States v. Stottlemere,* 28 M.J. 477 (C.M.A.1989) (upholding separate convictions for conspiracy to commit larceny of government funds and attempted larceny of those same funds upon applying rule set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); each crime required proof of an additional fact which the other does not).

This is not a case of the overt act that is not the object of the conspiracy occurring just as the agreement is formulated. Then, perhaps, separate charging and punishment might not present the separate facts required for separate conviction and punishment. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, and *United States v. Baker,* 14 M.J. 361 (C.M.A.1983). However, most cases would be like this one. Upon agreement to commit a crime, overt acts, criminal or not, would follow even though, as here, only a few hours had elapsed. All of those acts separate from the formation of the agreement would be punishable in themselves, if they were crimes. Thus, one would not escape conviction for a murder committed by any of the co-conspirators if it was foreseeable pursuant to a conspiracy to rob a bank.

Nevertheless, the breaking of the window on the automobile and larceny from it were contiguous parts of a course of conduct, and thereby were multiplicious for sentencing. *See United States v. Johnson,* 26 M.J. 686, 688 (A.C.M.R.1988), *aff'd,* 28 M.J. 452 (C.M.A.1989). The conspiracy was not multiplicious for sentencing with either the larceny which was its object or with the damage to private property that was one of the alleged overt acts. Accordingly, the maximum confinement was fifteen years, rather than, sixteen years. That did not affect the adjudged sentence, including a confinement for three years, nor the approved sentence. In our judgment that sentence is appropriate. *See United States v. Sales,* 22 M.J. 305, 309 (C.M.A.1986).

The findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms the sentence.

Senior Judge KUCERA and Judge GRAY concur.