**UNITED STATES of America,**
**Plaintiff,**

v.

**[1] Gerardo AMARO–RODRÍGUEZ, [2] Cristóbal Báez–Román, [3] Angel L. Ramírez–Vázquez, [4] Angel Rosado–Caldéron, Defendant.**

**Criminal No. 08–378 (GAG).**

United States District Court,
D. Puerto Rico.

Nov. 21, 2008.

---

Carlos R. Cardona, Elba I. Gorbea–Padro, United States Attorneys Office, District of Puerto Rico, San Juan, PR, for Plaintiff.

Octavio M. Rivera–Bujosa, Rivera Bujosa Law Office, Mercedita, PR, Jorge L. Armenteros–Chervoni, San Juan, PR, Juan E. Alvarez–Cobían, Juan E. Alvarez Law Office, Ponce, PR, José R. Olmo–Rodríguez, Olmo & Rodriguez Matias, Teodoro Méndez–Lebrón, Teodoro Mendez Lebron Law Office, San Juan, PR, for Defendants.

## ORDER OF DETENTION WITHOUT BAIL

MARCOS E. LÓPEZ, United States Magistrate Judge.

On November 5, 2008, defendants [1] Gerardo Amaro–Rodríguez ("Amaro–Rodríguez"), [2] Cristóbal Báez–Román ("Báez–Román"), [3] Angel L. Ramírez–Vázquez ("Ramírez–Vázquez"), and [4] Angel Rosado–Calderón ("Rosado–Calderón") were charged in a criminal complaint with violations to Title 21, *United States Code*, Sections 841(a)(1), 841(b)(1)(A)(ii), 952, 960(a)(1), 960(b)(1)(B), and Title 18, *United States Code*, Section 924(c)(1)(A). (Docket No. 1). According to the affidavit submitted in support of the criminal complaint, an inspection of the vessel where the four defendants were found revealed three hundred forty bricks of cocaine weighing approximately three hundred and ninety-seven kilograms. A .40 caliber Springfield Armory semi-automatic pistol, the affidavit attached to the complaint reads, was also found.

One week later, a grand jury returned an eight-count indictment against all four defendants. (Docket No. 32). Count one of the indictment alleges a violation to Title 21, *United States Code*, Sections 841(a)(1) and 841(b)(1)(A)(ii) (possession with intent to distribute five kilograms or more of cocaine). Count two charges a violation to Title 21, *United States Code*, Sections 846, 841(a)(1) and 841(b)(1)(A)(ii) (conspiracy to possess with intent to distribute five kilograms or more of cocaine). Count three accuses the defendants of hav-

ing violated Title 21, *United States Code,* Sections 952(a) and 960(a)(1) & (b)(1)(B) (importation of five kilograms or more of cocaine). Count four alleges a violation to Title 21, *United States Code,* Sections 963, 952(a) and 960(a)(1) & (b)(1)(B) (conspiracy to import five kilograms or more of cocaine). Count five charges a violation to Title 46, *United States Code,* Sections 70502(c)(1)(D), 70503(a)(1), 70504(b)(1) (possession of five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States). Count six accuses the defendants of having violated Title 46, *United States Code,* Sections 70502(c)(1)(D), 70503(a)(1), 70504(b)(1), and 70506(b) (conspiracy to possess five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States). Count seven alleges a violation to Title 18, *United States Code,* Section 924(c)(1)(A) (carrying a firearm during and in relation to a drug trafficking offense). The eighth count is essentially a forfeiture allegation.

The detention hearings for defendants Báez–Román and Ramírez–Vázquez were held on November 10, 2008, that is two days before the indictment was returned by a grand jury. (Docket No. 29). The detention hearings as to defendants Amaro–Rodríguez and Rosado–Calderón were held on November 13, 2008, that is one-day after the indictment was returned. (Docket No. 35 and 37).

 The defendants are presumed risks of flight and dangers to the community in view of the fact that a grand jury indictment provides probable cause to believe that the defendants have committed offenses for which they may receive a sentence of imprisonment of at least ten years under the Controlled Substances Act. *See*

21 U.S.C. § 801 et seq. and 18 U.S.C. § 3142(e). This rebuttable presumption is also triggered by the indictment's charge in count seven alleging possession of a firearm during and in relation to a drug trafficking offense. *Id.* and 18 U.S.C. § 924(c)(1)(A).[1] Defendants "must produce only 'some evidence' to rebut this presumption. When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." *U.S. v. Dillon,* 938 F.2d 1412, 1416 (1st Cir.1991).

All four defendants have requested that conditions of release be set. Counsel for Amaro–Rodríguez has presented arguments in a written motion which the court has taken into account. *See* Docket No. 39. According to the pretrial services report, Amaro–Rodríguez owns, among other assets, a six-apartment building with an equity of $150,000, another three-apartment building with an equity of $35,000, and another building where his business is located valued at $320,000. With respect to Báez–Román, defense counsel has argued that his client has no prior record of criminal activity, has no history of drug abuse, is a U.S. Citizen, has always worked and submitted tax returns, and has been a long-time resident of Puerto Rico. In addition, counsel for Báez–Román has advised that there is a house available for bail purposes with an equity of approximately $35,000–$40,000. Counsel for Ramírez–Vázquez proffered that he has letters of neighbors and friends advising about defendant's good character and that there is a real estate property available with an estimated equity of $65,000. Finally, Rosado–Calderón's attorney has argued that

---

**1.** If convicted on count seven and any one of counts one through six, the defendants would be facing not only a minimum sentence of ten years of imprisonment, but also an additional consecutive minimum term of imprisonment of not less than five years.

there is a property with an approximate value of $100,000 available for bail purposes, that defendant's mother is willing to serve as a third-party custodian, and that several relatives of said defendant are willing to testify as to the good character of the accused. All the defendants appear to argue as well, explicitly or implicitly, that the controlled substances were hidden in the vessel, thus suggesting that the weight of the evidence is weak as to the *mens rea* or knowledge element of the offenses charged.

■ These four defendants, the government claims, were in a forty-three foot vessel that was carrying in a concealed compartment in excess of three hundred ninety kilograms of cocaine and a firearm. According to the government, this amount of controlled substances has a street value of at least ten million dollars. The fact that these defendants have also been charged with being involved in a conspiracy aggravates the concerns presently at issue "because to unite, back of a criminal purpose, the strength, opportunities and resources of many is obviously more dangerous and more difficult to police than the efforts of a lone wrongdoer." *Krulewitch v. U.S.*, 336 U.S. 440, 448–449, 69 S.Ct. 716, 93 L.Ed. 790 (1949). "Conspiracy in federal law aggravates the degree of crime over that of unconcerted offending." *Id.* at 449, 69 S.Ct. 716.

[C]ollective criminal agreement partnership in crime presents a greater potential threat to the public than individual acts. Concerted action both increases the likelihood that the criminal object will be successfully attained and de-creases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal would accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

*Jeffers v. U.S.*, 432 U.S. 137, 157, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (quoting *Callanan v. United States*, 364 U.S. 587, 593–594, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961)).

With respect to Ramírez–Vázquez, the court adopts by reference the information of the pretrial report and its recommendation. Although Ramírez–Vázquez has no prior convictions, he has prior arrests for weapons law violations, robbery, domestic violence, and aggression.[2] In addition, he is active in the use of controlled substances such as marijuana and cocaine. Furthermore, Ramírez–Vázquez appears to have given incongruent information to the pretrial services office as to his address of record, travels, and studies.

As to the other three defendants, namely Amaro–Rodríguez, Báez–Román, and Rosado–Calderón, the court adopts by reference as well the information contained in the pretrial services reports, but not their recommendations.[3] A grand jury has,

---

2. Prior arrests may be considered even though the defendant has not been convicted on the charges. *United States v. Acevedo–Ramos*, 755 F.2d 203, 209 (1st Cir.1985).

3. As to Rosado–Calderón, it is noted that this is not the first time that this defendant has encounters with the law as, pursuant to what was reported by the Carolina Superior Court, the defendant pled guilty to an illegal appropriation of a vehicle.

among other things, found probable cause that these defendants have acted for all practical purposes as wholesale importers of controlled substances; such role may seem trivial, but it is critical for a drug distribution enterprise to succeed.

These defendants will be detained pending trial based upon the probable cause determination of the grand jury, the nature and circumstances of the offenses charged, the strength of the government's case, and the failure to rebut the presumption established by 18 U.S.C. § 3142(e).[4] Admittedly, the identity and quantity of the drugs involved, as well as the severe penalties that defendants are exposed to if convicted and the strength of the government's case are factors that weigh with particular emphasis in the court's determination.

These defendants are committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendants shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendants to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.

---

4. Even though no indictment had been issued yet as to Báez–Román and Ramírez–Vázquez when the detention hearing was held as to those two defendants, the fact that an indictment was returned by a grand jury shortly thereafter bolsters the court's previous determination to detain them.