# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 KENNETH W. BROGAN**
**United States Army, Appellant**

ARMY 20130419

Headquarters, Fort Bliss
Timothy P. Hayes, Jr., Military Judge
Colonel Edward K. Lawson IV, Staff Judge Advocate (pretrial)
Colonel Karen H. Carlisle, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Peter Kageleiry, Jr., JA; Captain Aaron R. Inkenbrandt, JA.

For Appellee: Lieutenant Colonel James L. Varley, JA.

19 May 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of conspiracy to violate a lawful general regulation, one specification of violating a lawful general regulation, and one specification of obstructing justice, in violation of Articles 81, 92, and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, and 934 [hereinafter UCMJ].[1] The military judge sentenced appellant to a dishonorable discharge and

----

[1] After entry of pleas but before findings, the military judge dismissed one specification of violating a lawful general regulation and one specification of wrongfully communicating a threat, in violation of Articles 92 and 134, UCMJ.

confinement for four years. The convening authority approved only a bad-conduct discharge and confinement for two years.[2]

This case is before us for review pursuant to Article 66, UCMJ. Appellant submitted a merits pleading to this court and personally raised issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We find one issue raised personally by appellant warrants discussion and relief. We find the remaining issues to be without merit.

## BACKGROUND

Around October, 2011, appellant became a member of an extremist organization in El Paso, Texas.[3] The organization, dubbed the "20th Infantry," was composed of approximately fourteen members, both military and civilian. The primary aim of the organization was to protect the U.S.-Mexico border against drug cartel members and drug traffickers through the use of lethal force, conduct surveillance on local Muslims, and prepare for a breakdown in U.S. government functions. Appellant was aware of the aims of the group when he joined the 20th Infantry and throughout his membership in the group.

The group was organized like a military unit. The members wore uniforms, carried weapons, and had a rank structure and specific job designations. At various times throughout late 2011 and into the summer of 2012, appellant attended group meetings and training events wherein he participated in planning efforts and discussions aimed at ambushing and killing drug traffickers and cartel members at various locations. During at least one training event, appellant personally taught squad movement and weapons firing techniques to organization members.

In September 2012, the group's "executive officer," Specialist (SPC) MM, was admitted to a mental health facility for treatment. The group believed SPC MM might be inclined to cooperate with law enforcement and disclose their activities.

---

[2] The staff judge advocate recommended that the convening authority approve forty-seven months of confinement providing appellant with a one-month reduction in confinement to moot any issue of post-trial delay.

[3] Army Reg. 600-20, Army Command Policy, para. 4-12 (Extremist Organizations and Activities) (18 Mar. 2008) (RAR, 27 Apr. 2010) explains that "extremist organizations and activities are ones that advocate racial, gender or ethnic hatred or intolerance; advocate, create, or engage in illegal discrimination based on race, color, gender, religion, or national origin, or advocate the use of or use force or violence or unlawful means to deprive individuals of their rights under the United States Constitution or the laws of the United States, or any State, by unlawful means."

As a result, the group's leader, Staff Sergeant Mallar, instructed the members to not cooperate with law enforcement if they were questioned. Subsequently, appellant personally threatened SPC MM with bodily harm if he cooperated with law enforcement. This action formed the basis for the obstructing justice charge.

Eventually, the group's activities were uncovered by law enforcement. The government charged appellant, *inter alia*, with one specification of conspiracy to fail to obey Army Regulation (AR) 600-20 by wrongfully participating in an extremist organization as well as one specification of actually failing to obey AR 600-20 by wrongfully participating in an extremist organization.

## LAW AND DISCUSSION

*Unreasonable Multiplication of Charges*

"What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." Rule for Courts–Martial 307(c)(4). The prohibition against unreasonable multiplication of charges "addresses those features of military law that increase the potential for overreaching in the exercise of prosecutorial discretion." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012) (quoting *United States v. Quiroz*, 55 M.J. 334, 337 (C.A.A.F. 2001)). In *Quiroz*, our superior court listed five factors to help guide our analysis of whether charges have been unreasonably multiplied:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?;
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?;
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?;
>
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?; and
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

55 M.J. at 338–39 (internal quotation marks omitted).

3

Application of the *Quiroz* factors under these facts balances in favor of appellant. Accordingly, we determine that charging conspiracy to fail to obey a lawful general regulation by participating in an organization and participation in that same organization is an unreasonable multiplication of charges for findings. Appellant stands needlessly convicted of both offenses. Although trial defense counsel made no objection to this charging scheme at trial, the two separate charges exaggerate appellant's criminality by penalizing the same act two ways. Each charged offense is aimed at the same criminal activity. The "agreement" that attends each offense is targeted due to the same desire to avert the danger to society of concerted criminal activity. *See Iannelli v. United States*, 420 U.S. 770 (1975).

The Supreme Court repeatedly has recognized that a "conspiracy poses distinct dangers quite apart from those of the [underlying] substantive offense" that is the object of the conspiracy. *Id.* at 778. The *Iannelli* Court reemphasized that:

> 'This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement-partnership in crime-presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.'

*Id.* (quoting *Callanan v. United States*, 364 U.S. 587, 593-594 (1961). "The basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it seeks to accomplish." *Dennis v. United States*, 341 U.S. 494, 573 (1951) (Jackson, J., concurring opinion). Similarly, the regulatory prohibition against participation in extremist organizations addresses the same societal danger of concerted criminal activity.

4

Appellant's agreement with other participants to participate in an extremist organization and his actual participation in that same organization represent the same act and could not logically occur without the agreement of others within the organization. The nature of the regulatory violation itself of participating in an extremist organization requires a meeting of the minds within that organization. Therefore, in our view, appellant should not be convicted or punished twice for a single act which posed the same danger and threat to society. As such, we find appellant's conviction for conspiracy to fail to obey the regulation constituted an unreasonable multiplication of charges with the separate charge and conviction for his failure to obey the regulation itself pursuant to Article 92, UCMJ.

## CONCLUSION

The findings of guilty of the Specification of Charge I and Charge I are set aside and that specification and charge are DISMISSED. The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. Second, appellant was tried and sentenced by a military judge. Third, we find the nature of the remaining offenses still captures the gravamen of the original offenses and the aggravating circumstances surrounding appellant's conduct remains admissible and relevant to the remaining offenses. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial. We are confident that based on the entire record and appellant's course of conduct, the military judge sitting alone as a general court-martial, would have imposed a sentence of at least two years of confinement and a bad-conduct discharge.

Reassessing the sentence based on the noted error and the remaining findings of guilty, we AFFIRM the approved sentence. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

5

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court