504 So.2d 1353 (1987)
James Robert LaPOLLA and Robert Anderson, Appellants,
v.
STATE of Florida, Appellee.
No. 4-86-0509.
District Court of Appeal of Florida, Fourth District.
April 1, 1987.
Rehearing Denied April 29, 1987.
*1354 Mark King Leban of Law Offices of Mark King Leban, P.A., Miami, and Harry Gulkin, Fort Lauderdale, for appellants.
Robert A. Butterworth, Jr., Atty. Gen., Tallahassee, and Amy Lynn Diem, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
The defendants appeal their judgment and sentence. We affirm.
Appellants, Robert Anderson and James Robert LaPolla, (and a third man, Thomas Luck, not an appellant) were charged by information with a single count of conspiracy to traffic in cocaine and possess cannabis. The information charged that the objects of the conspiracy were to deliver to Dennis Gavalier [a narcotics investigator] 400 or more grams of cocaine or a mixture containing cocaine, and for Anderson to achieve possession of more than 100 but less than 2,000 pounds of cannabis. Conspiratorial acts were alleged to include certain telephone calls, and meetings at stated places, during which negotiations about the transaction occurred. A subsequent *1355 amended complaint was silent about the cannabis.
Anderson and LaPolla moved to dismiss. LaPolla moved to dismiss or sever.
Defendants moved to exclude coconspirators' testimony, and a James hearing was held prior to trial. (The reference is to United States v. James, 590 F.2d 575 (5th Cir.), cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). James does not require a pretrial hearing, but merely that the trial court apply the following to determine the admissibility of coconspirator statements: coconspirator statements are admissible if the court finds that the prosecution has shown, by substantial, independent evidence, the existence of a conspiracy to which both defendant and declarant were parties, and that the statements were made in the course of and in furtherance of the conspiracy. Id. at 581.) The court found the statements admissible.
The three defendants were tried to a jury, which found all three guilty. All defendants moved unsuccessfully for judgments of acquittal for insufficient evidence and lack of proof of intent (and on other grounds) both at the close of the state's case and at the close of all of the evidence. Appellants' motions for new trial were heard and denied. Judgment was entered and sentence imposed, each getting a prison term of fifteen years. This appeal followed.
The pertinent facts are as follows. Gary Williams, facing a charge of trafficking in cocaine, and faced with a fifteen year mandatory minimum prison term, agreed to assist the authorities in apprehending traffickers in exchange for mitigation of sentence. Working with agents Gavalier and Cacciatore, Williams arranged for a meeting at a bar and restaurant, the Pierce Street Annex, on March 28, 1983, between Gavalier and himself and LaPolla and Luck. Gavalier testified that the conversation turned to cocaine; that LaPolla asked him how many kilos he was looking for; that he replied two for now, but he would like to get into a steady business relationship under which he would buy about six kilos a week, the cocaine being for his brother in Ohio; that Luck was present during this conversation, (Williams said LaPolla and Gavalier were separated from him and Luck during the negotiations); that LaPolla told Gavalier he could handle up to two hundred kilos a week any time; that there was discussion of price, quantity and quality; that the transaction had to be definite before his brother would come down; that Luck said he would pay the brother's travel expenses if the deal fell through; and that the original quote was $58,000 per kilo, but they ultimately agreed, after Luck left with a woman, to sale/purchase of two kilos at $57,000 each.
When Luck returned, there was discussion about whether Gavalier had a connection for marijuana. It was agreed to meet again the next day. LaPolla went to make a phone call and returned to say he could make the transaction. It was set to occur the next day.
The next day at 12:25 p.m. Gavalier received a phone call from LaPolla. Gavalier recorded this call. Gavalier said he needed to talk with LaPolla and would bring some "cake (money)." They agreed to meet in the parking lot of a Denny's Restaurant in half an hour. Shortly after the LaPolla phone call, Gavalier received a phone call from Gary Williams. Williams said LaPolla could not come to the meeting and would be in touch. At 1:23 p.m. LaPolla again called. Gavalier taped this call also. It was agreed to meet at the K-Mart on Oakland Park Boulevard. The two of them met there. LaPolla said Gavalier would have to give him the money before the cocaine was delivered, as his people didn't want to meet anybody. Gavalier said he would not "front" the money.
At 4:30 p.m. LaPolla called again. Gavalier taped this conversation. LaPolla offered Gavalier his friend's 1978 Excalibur automobile as security for the money. Gavalier said he could not risk fronting the money because if the cocaine was not produced in exchange he was dead. This was in conversation with Anderson, who had gotten on the phone. Anderson thought Gavalier ought to be willing to trust Gary Williams, whom Anderson had helped in *1356 the past, and whom Gavalier had said he had known for ten years. Anderson said he could leave one of his people with Gavalier while waiting for the cocaine delivery; and that Gavalier could hold the title to Anderson's Excalibur during the transaction; assuring Gavalier he was not in the business of ripping off customer's money, but wanted to establish long-term business. He said one package would be brought to Gavalier and then the other; that Gavalier would have to give $45,000 to Gary Williams, who would be the courier, and Anderson would supply the rest of the money for the first kilo; and that he understood Gavalier was looking to buy six kilos a month, and then that he forgot what he had been told. Gavalier said he had discussed six kilos a week, but would pass on the transaction.
The next day at 6:40 p.m. Gavalier received a page. He went to a pay phone and called the number, which was a pay phone at Dina's Tree House. He tape recorded the ensuing telephone conversation, which was with Anderson. In essence the conversation again concerned leaving the Excalibur and its title with Gavalier as security for the $45,000. If Gavalier liked the cocaine he would return the car and title.
According to Gavalier he decided later that evening not to proceed with the transaction, because he did not want to advance the money. Easter weekend ensued. When Gavalier returned after the weekend, Williams informed him LaPolla was still interested in carrying out the deal.
At 10:20 a.m. April 4, 1983, Gavalier called LaPolla. The conversation was taped. They agreed to meet at McDonald's Restaurant.
The meeting there took place at 10:45 a.m. LaPolla said he wanted to work things out, but still in the same way. They agreed to carry out the transaction that afternoon.
In a 12:22 p.m. telephone call to Gavalier that Gavalier also taped, LaPolla said he had just talked to Gary Williams, the price was $57,000, and Gavalier was to bring $45,000. In a later recorded call from LaPolla to Gavalier, it was agreed to meet at Denny's. LaPolla would give Gavalier the Excalibur and someone would wait with Gavalier. Gavalier would turn over the $45,000. There was a further call at 1:30, in which LaPolla said he'd meet Gavalier at Denny's in ten minutes.
At 1:52 p.m. Gavalier was already at Denny's, when he saw LaPolla drive up in the Excalibur and park near him. Luck drove up in a Hornet and parked a little distance off. Gavalier showed LaPolla the money and LaPolla gave Gavalier the auto title. Gavalier gave Luck the money. LaPolla and Luck were then arrested. Anderson was arrested in another part of the parking lot.
According to Gary Williams' testimony, LaPolla and Luck had told him they had a good connection for cocaine. When he first talked with Anderson and LaPolla they told him they had cocaine to sell.
There are two issues:
I. Whether the trial court erred in denying the appellants' motions for judgment of acquittal at the close of the state's case, inasmuch as the state failed to produce any evidence of an agreement between the appellants to deliver cocaine, or that any defendant ever intended to deliver cocaine. We conclude it did not. Evidence of a conspiratorial agreement or of intent to commit a crime may be circumstantial, and if a prima facie case has been made out such motions should not be granted.
II. Whether the trial court erred in denying the appellants' motions for judgment of acquittal, inasmuch as the circumstantial evidence introduced by the state failed to exclude a reasonable hypothesis of innocence of the crime charged. We conclude it did not. So long as there was enough evidence to send the case to the jury, it is for the jury to determine whether reasonable hypotheses of innocence have been ruled out.
Appellants' two issues will be treated together, inasmuch as direct evidence of a conspiratorial agreement and of intent to commit a crime is not a requirement; and circumstantial evidence is a sufficient basis *1357 for a jury verdict under circumstances that will be described below.
"In order to be guilty of conspiring to violate ... [a criminal] statute it must be proved that appellant agreed with another to commit a criminal offense while intending to commit the offense." Bragg v. State, 487 So.2d 424, 426 (Fla. 5th DCA 1986); see also § 777.04(3), Fla. Stat. (1983). The state must prove the acts contemplated in the conspiracy would constitute an offense under a Florida statute. There is no requirement that there be an overt act in furtherance of the conspiracy. Beke v. State, 423 So.2d 417, 419 (Fla. 2d DCA 1982).
Here the statutes the appellants were alleged to have conspired to violate were sections 893.135(1)(b)(3), 893.135(4) and 893.03(2)(a)4, Florida Statutes (1983). Appellants point out that there is no conspiracy if the only persons involved are the defendant and a government agent seeking out such offenders. E.g., O'Brien v. State, 454 So.2d 675 (Fla. 5th DCA 1984). There is no conspiracy, likewise, when an essential act of the conspiracy is the sole responsibility of a government agent. King v. State, 104 So.2d 730 (Fla. 1958). One who aids and abets a crime is not a member of a conspiracy if the elements of a conspiracy involving him are not shown, albeit he may be liable for the substantive crime performed. Ashenoff v. State, 391 So.2d 289 (Fla. 3d DCA 1980). There is no conspiracy if there are only aiders and abettors to someone planning or carrying out a crime. Appellants urge that at most they may have been aiders and abettors of a crime other than conspiracy.
Appellants do not deny that circumstantial evidence, if sufficient to show beyond a reasonable doubt existence of the elements of agreement and intent to commit the crime that is the subject of the agreement may be the basis of a conviction. See Lavette v. State, 442 So.2d 265 (Fla. 1st DCA 1983), review denied, 449 So.2d 265 (Fla. 1984). Circumstantial evidence is sufficient, however, only when it not only is consistent with a hypothesis of guilt but also is inconsistent with every reasonable hypothesis of innocence. See, e.g., Butts v. State, 418 So.2d 468 (Fla. 4th DCA 1982). Whether the evidence fails to exclude all reasonable hypotheses of innocence is a fact question for the jury, which an appellate court will not overturn when there is substantial, competent evidence to support the jury verdict. Rose v. State, 425 So.2d 521, 523 (Fla. 1982); Fratello v. State, 496 So.2d 903 (Fla. 4th DCA 1986). Appellants cite cases considerably earlier than Rose and modified by it, by inference. They also rely on cases where the circumstantial evidence simply was meagre to the extreme.
As appellee points out, a motion for judgment of acquittal should be denied unless legally sufficient evidence on which to base a guilty verdict is absent. E.g., Everett v. State, 339 So.2d 704 (Fla. 3d DCA 1976); Garmise v. State, 311 So.2d 747 (Fla. 3d DCA 1975). In reviewing the denial of a motion for judgment of acquittal, the appellate court must regard all facts introduced in evidence as admitted by the defendant, and must indulge every reasonable inference in favor of the state. Everett, 339 So.2d at 706; see also McKnight v. State, 341 So.2d 261 (Fla. 3d DCA 1977). It is not necessary to prove that there was a formal agreement among the alleged conspirators if a conspiratorial agreement can be inferred from circumstantial evidence indicative of an overall plan. Beke, 423 So.2d at 419 (citing Resnick v. State, 287 So.2d 24 (Fla. 1973); Borders v. State, 312 So.2d 247 (Fla. 3d DCA 1975)). This court has spoken similarly in, among other cases, Manner v. State, 387 So.2d 1014 (Fla. 4th DCA 1980), and more recently Harris v. State, 450 So.2d 512 (Fla. 4th DCA 1984). In State v. Cristodero, 426 So.2d 977, 980 (Fla. 4th DCA 1982), this court quoted the statement in McCain v. State, 390 So.2d 779 (Fla. 3d DCA 1980), to the effect that the jury is free to infer a common purpose to commit the crime from all the circumstances involved.
We do not think it necessary to repeat the facts to show that the testimony and other evidence concerning various face-to-face *1358 and telephonic conversations between Gavalier and the appellants and between Williams and the appellants revealed circumstances from which the jury could infer that appellants had a common purpose to violate the drug trafficking laws. We have not considered the testimony of Gary Williams and Robert Anderson because it was not in evidence at the time the state closed its case-in-chief. The state does include some of their testimony in its recap of the facts supporting their claimed prima facie case. We do not think the case-in-chief was less than prima facie, nevertheless, even after an exclusion of the testimony of these two witnesses which the state recites. Unlike Lavette, for example, in which the circumstantial evidence to show a conspiracy to commit an offense was insufficient, primarily because the two alleged conspirators were never simultaneously in contact with the state's principal witness, and by the nature of what each of them said a jury could not reasonably exclude the hypothesis that their inquiries were independent of each other, here the defendants dealt with the state's chief witness, Officer Gavalier, on more than one occasion, in pairs rather than individually, and their words and conduct reasonably implied a conspiracy between or among them to traffic in cocaine.
Appellants argue that because Gavalier himself was fearful appellants planned to rip off the money rather than deliver the cocaine, there was not a sufficient case to go to the jury. Gavalier's subjective concerns do not overcome the circumstantial evidence in favor of a conspiracy. The trial judge determines whether a prima facie case has been made; and if the trial judge finds that it has, then the jury, not a witness, is to determine whether the circumstantial evidence of a conspiracy supports the charge beyond a reasonable doubt and whether alternative hypotheses may reasonably be ruled out.
Appellants suggest that even if there was agreement to commit a crime it may have been to rip off the supposed cocaine buyer, rather than to traffic in cocaine, of which latter there was no evidence as the arrests occurred as soon as the title and the money were exchanged. An authority that deals with something akin to this argument is State v. Rodriguez-Jimenez, 439 So.2d 919 (Fla. 3d DCA 1983). There the defendants argued that it was not possible to tell from the charge who of the defendants was supposed to have committed which act set forth in the information. In dealing with this argument, the appellate court pointed out that the manner or means of the crime alleged to be the object of the conspiracy are unnecessary to the adequacy of a conspiracy charge inasmuch as the occurrence of overt acts is not an element of conspiracy in this state. More to the point, the Rodriguez-Jiminez court said that "since the gist of the offense is the conspiracy, it is immaterial whether any of the acts alleged were actually committed and who of the conspirators committed them if committed." Id. at 922. This statement is also found in State v. Mena, 471 So.2d 1297, 1301 (Fla. 3d DCA 1985). While this does not precisely address the issue here, it seems reasonable to infer that, where the crime the appellants are supposed to have conspired to commit was not completed, it is permissible for the jury to infer from the circumstances  so long as the inference is reasonable  that the object of the conspiracy was as charged. See also Lavette v. State, 442 So.2d 265, 266 (Fla. 1st DCA 1983) ("Boyd's testimony provides circumstantial evidence, which can be used to show agreement and intent... .")
Here there were extensive negotiations about delivery by one or more of the conspirators of at least a kilo of cocaine after the supposed buyer received as collateral for his money an expensive car and its title, and after he gave one of the coconspirators $45,000. It was understood one of the conspirators  Luck  would remain with the buyer  essentially as a hostage  during the interval between the transfer of the money and the transfer of the cocaine, which latter never happened because the actors were arrested before it could happen. It was reasonable for the jury to conclude that trafficking in cocaine was the *1359 object of the conspiracy, and that the delivery would have occurred, or was intended by appellants to occur, if not prevented by the arrest of the principals.
Appellants argue along the same line that there was no evidence they even had access to any cocaine. Again, the jury had a right to infer that they, the appellants, could deliver, from their statements that they had cocaine to sell and LaPolla's boasting as to the quantities he could supply  up to 200 kilos a week, and the fact they were prepared to leave a hostage and a car.
Appellants attempt to distinguish what kind of evidence may be sufficient to support intent to buy from what is needed to support intent to sell. Thus, they say, in McCain v. State, mentioned earlier, it was proper to infer intent to buy a large amount of marijuana from the fact the defendants arrived in a van with a large amount of cash. On the other hand, they suggest, how can intent to sell be derived when there is no contraband in evidence? While, like appellants, we have not found a case in which sellers have been convicted of conspiracy when there was no contraband in evidence, we see no reason why their intent could not be inferred from their conversation and conduct, circumstantial though this evidence is. This is a reasonable inference from cases like Rodriguez-Jimenez and Mena.
Following is a related but slightly different line of reasoning. In State v. Smith, 240 So.2d 807, 810-11 (Fla. 1970), we are taught that it is unnecessary, in charging a conspiracy to commit first degree murder, to allege the manner or means by which the victim's death was to be effected. The Smith court reasoned that this was so because it is possible to conspire to commit a murder without having yet decided how to do it. Why can it not be reasoned, by analogy, that persons can unlawfully conspire to traffic in drugs even though (so far as we know) they do not yet have drugs available to traffic in? We must not overlook that under Florida law we need no overt act in furtherance of the conspiracy to prove the conspiracy. Why would we need proof the conspirators could have carried out the crime said to be their object?
The question of intent to commit the offense that was the object of the alleged conspiracy is hardly distinguishable from the question of whether trafficking was indeed the object, if there was an agreement to commit a crime. Intent is almost always shown circumstantially, unless one or more of the conspirators testify as to the intent. The Rose statement of the law paraphrased earlier is again applicable.
This court has merely to determine now whether there was competent, substantial evidence on which to base the verdict and judgment. Fratello v. State, 496 So.2d at 908 (citing Tibbs v. State, 397 So.2d 1120 (Fla. 1981), affirmed, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982)). There was.
ANSTEAD, J., and KLEIN, HERBERT M., Associate Judge, concur.