715 So.2d 1038 (1998)
Juan A. JIMENEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-2717.
District Court of Appeal of Florida, Third District.
July 29, 1998.
Rehearing Denied September 2, 1998.
*1039 John H. Lipinski, Hollywood, for appellant.
Robert A. Butterworth, Attorney General, and Alison B. Cutler, Assistant Attorney General, for appellee.
Before JORGENSON, LEVY and GREEN, JJ.
GREEN, Judge.
Appellant Juan Jimenez was charged by information with the criminal offenses of conspiracy to traffic in cocaine, trafficking in cocaine and resisting an officer with violence. After a jury trial, he was found guilty of conspiracy to traffic in cocaine, possession of cocaine and resisting an officer without violence. We affirm his conviction and sentences.
On this appeal, the appellant first argues that the state's purely circumstantial case against him was insufficient to support a conviction for conspiracy, and at best, established that he was merely present at the site of the narcotics transaction. This case involved a "reverse sting" wherein the police, in their undercover capacity, were the sellers of the cocaine. The evidence, viewed in the light most favorable to the state, reflects that a police informant made a controlled telephone call from a telephone used exclusively for police undercover operations to an individual identified as Antonio Ulloa. This call was in response to a previous beep from Ulloa to the informant at that number. The informant knew Ulloa to be a drug broker, that is, someone who puts together buyers and sellers in narcotics transactions. During a second controlled telephone call, Ulloa and the informant agreed to meet at the Cutler Ridge Mall in South Dade for the purpose of having Ulloa view the cocaine which was for sale.[1] According to the informant the actual purchaser was from New York. Ten kilos of cocaine were then checked out of the police property safe, placed in a cooler and transported to the mall by two undercover police in an undercover vehicle. The informant arrived in a pickup truck with Ulloa and parked to the west of the undercover police. Both the informant and Ulloa got out and walked over to the undercover police vehicle to inspect the cocaine inside of the cooler. Undercover Officer James Bittar then told Ulloa that he had one hour to return with the money. The appellant was not present at this first meeting.
Arrangements were then made for a second meeting at the same mall, but at a different location. This time, Ulloa and the informant arrived in a Ford Escort driven by Ulloa. The appellant was seen driving an Isuzu Rodeo behind Ulloa and the informant; it appeared as though the appellant was following them. The appellant parked into a spot facing both the Ford Escort and the police vehicle. Both Ulloa and the informant exited the Escort. Officer Bittar and Ulloa walked back to the Escort to view the money and the officer observed a bag containing a large amount of U.S. currency on the front floorboard of the vehicle. Ulloa told the officer that there was only enough money for five kilos of cocaine. Officer Bittar retrieved the bag of money and placed it inside of the undercover vehicle. The informant then retrieved the cooler containing the five kilos from the police vehicle and placed it into the back hatch of the Escort. Officer Bittar asked Ulloa how long it would take him to get the money for the other five kilos. Officer Bittar then gave the take-down signal for the other officers to move in and make the arrests.
As the take-down signal was being given, Detective Moore immediately pulled his vehicle *1040 up to the rear of the appellant's Isuzu Rodeo where the appellant had remained throughout the transaction. When Detective Moore and the other officers started to get out of their vehicles to announce their presence as police officers, the appellant immediately backed his Rodeo into Detective Moore's vehicle in an attempt to flee. Detective Moore was injured in the process. The appellant was then arrested and charged along with Ulloa.
At the trial, the state adduced further evidence that the appellant had arrived from New York a day before the transaction and was scheduled to return to New York within two days thereafter. The appellant had rented the Ford Escort in which Ulloa and the informant had driven and transported the money to the scene. The appellant, who had been staying with his sister while visiting Miami, had driven his sister's Isuzu Rodeo to the scene. After the appellant's arrest, the appellant's sister consented to a search of her home with K-9 unit dogs. These K-9 dogs are trained to alert to the presence of U.S. currency, even when the currency has been removed. Although this search did not reveal the presence of drugs, weapons or large amounts of U.S. currency, the K-9 dogs did alert and draw the officer's attention to a piece of luggage. The officers testified that although there were some clothes in this luggage, there was still sufficient room for other things.
After the state rested its case in chief and the appellant's motion for judgment of acquittal was denied, the defense called two witnesses. The first was the appellant's sister, who testified that the appellant had come to pay for her daughter's school expenses. It was later adduced, however, that her daughter had no significant school expenses since the girl attended public school. The appellant's sister also testified that the appellant had rented an automobile upon his arrival in Miami. Notwithstanding this fact, she further stated that the appellant had asked to borrow her Isuzu Rodeo to visit his real estate agent. She stated that the appellant had planned to relocate to Florida and was interested in looking at some properties.
The defense next called Jose Cruz, a local real estate agent, and friend of the appellant. Cruz testified that the appellant had contacted him about property but the two had not set up any appointments. The defense then rested.
Based upon this evidence, we reject the appellant's argument that the evidence is insufficient to support a conspiracy conviction. The crime of conspiracy is comprised of the mere express or implied agreement of two or more persons to commit a criminal offense; both the agreement and an intention to commit an offense are essential elements. See Pino v. State, 573 So.2d 151, 152 (Fla. 3d DCA 1991); LaPolla v. State, 504 So.2d 1353, 1357 (Fla. 4th DCA 1987); see also § 777.04(3), Fla. Stat. (1995). "There is no requirement that there be an overt act in furtherance of the conspiracy." LaPolla, 504 So.2d at 1357. Moreover, direct proof of the agreement is unnecessary to establish a conspiracy; the jury may consider and infer from the surrounding circumstances, including the defendant's presence at the scene, that a common purpose to commit a crime existed and that the defendant was a part thereof. See Wilder v. State, 587 So.2d 543, 546 (Fla. 1st DCA 1991)("While presence at the scene of a crime is not sufficient to establish a conspiracy, presence is a factor that may be considered in determining whether a conspiracy existed."); Pino, 573 So.2d at 152; Gonzalez v. State, 571 So.2d 1346, 1348 (Fla. 3d DCA 1990)(the jury is free to consider surrounding circumstances and defendant's presence at the place of the sale to determine defendant's guilt); LaPolla, 504 So.2d at 1357.
Here, the jury could have reasonably inferred that the appellant conspired with Ulloa to purchase cocaine based upon the facts that the appellant arrived in Miami for a short visit; rented and followed the vehicle in which the money used to purchase the cocaine was transported to the site of the sale; and police K-9 dogs alerted to the former presence of U.S. currency in luggage found where the appellant had been residing.
Although we recognize that the state's use of circumstantial evidence for a conviction must be consistent with guilt and inconsistent *1041 with any reasonable hypothesis of innocence, see K.O. v. State, 673 So.2d 47, 48 (Fla. 4th DCA 1995), we conclude that the evidence did rule out any hypothesis of innocence. Hence, we will not disturb the jury's finding of guilt on appeal. See LaPolla, 504 So.2d at 1357 ("Whether the evidence fails to exclude all reasonable hypotheses of innocence is a fact question for the jury, which an appellate court will not overturn when there is substantial, competent evidence to support the jury verdict.").
Appellant next asserts that the evidence was insufficient to support his conviction for possession, as a lesser included offense of trafficking, where there was no evidence of his knowledge of the cocaine or of his dominion or control over it. The state correctly points out that where, as here, the appellant specifically requested an instruction on this lesser included offense (and/or affirmatively relied thereon), he may contest the sufficiency of the evidence on the lesser included offense only if the evidence was insufficient to convict him of the greater charge of trafficking as well. See State v. Espinosa, 686 So.2d 1345, 1348 (Fla.1996), review denied, 705 So.2d 10 (Fla.1997); see also Viveros v. State, 699 So.2d 822, 825-26 (Fla. 4th DCA 1997); Bradford v. State, 567 So.2d 911, 915 (Fla. 1st DCA 1990). As explained by the supreme court:
To hold otherwise would allow a defendant to request an instruction on the lesser-included offense in anticipation that the jury will exercise its "pardon power," after which the defendant could seek reversal based on the sufficiency of the evidence. ("[P]ardon power" allows jury to find defendant guilty of lesser-included offense even when evidence is sufficient to convict for greater offense). Such a holding would allow a defendant to essentially "sandbag" the State while committing a fraud on both the jury and the judge.
Espinosa, 686 So.2d at 1348 (citation omitted). We find that the evidence was sufficient to convict appellant of the greater offense of trafficking. Hence, the appellant's challenge to his conviction on the lesser included offense of possession must necessarily fail.
Pursuant to section 893.135(1)(a), Florida Statutes (1995), the crime of trafficking is committed by any person who knowingly sells, purchases, manufacturers, delivers or brings cocaine into this state or who is knowingly in actual or constructive possession of a certain amount of cocaine or any mixture containing cocaine. The state prosecuted the appellant for the commission of this offense under an aiding and abetting theory. Under this theory, the appellant could be convicted of trafficking if the state's evidence was sufficient to show that he: "(1) assisted the actual perpetrators by doing or saying something that caused, encouraged, assisted, or incited the perpetrators to actually commit the crime, and (2) intended to participate in the crime." K.O., 673 So.2d at 48 (citing A.B.G. v. State, 586 So.2d 445, 447 (Fla. 1st DCA 1991)); see also T.J.T. v. State, 460 So.2d 508, 509 (Fla. 3d DCA 1984). As with the count for conspiracy, the state may rely upon circumstantial evidence to establish the guilt of an aider or abettor provided such evidence is both consistent with guilt and inconsistent with any reasonable hypothesis of innocence. See K.O., 673 So.2d at 48. A defendant's mere presence at the scene with knowledge that the crime is about to be committed, without more, will not eliminate the reasonable hypothesis of innocence. See T.J.T., 460 So.2d at 510; see also A.B.G., 586 So.2d at 447.
We believe that the state's circumstantial evidence in this case, as set forth earlier in this opinion, was sufficient for the jury to reasonably conclude that the appellant was an active participant in the purchase of this cocaine from the undercover police and not an innocent bystander. In particular, we think that the appellant's rental of the vehicle which, in turn, was used by the actual perpetrator to transport the money for the purchase of the cocaine to the scene, coupled with appellant's act of following this vehicle to observe the transaction is compelling circumstantial evidence of his active participation in the crime of trafficking. We therefore find no error in his conviction for possession.
*1042 After carefully considering the appellant's remaining arguments on appeal, we conclude that they are either without merit and do not warrant further discussion or they have not been properly preserved for appellate review. We therefore affirm the appellant's judgment of conviction and sentences.
Affirmed.
NOTES
[1] According to the state's witnesses, it is a common procedure in the drug trade for there first to be a showing of the cocaine or a "flash" before money is exchanged.