ROTHENBERG, J.
 

 Manuel Calderon (“the defendant”) appeals his conviction and sentence for conspiracy to commit murder in the first degree. Because the defendant was convicted of a felony that resulted in a death, the amended statute of limitations, providing that such prosecutions may be brought at any time, applies. Therefore, we reject the defendant’s argument that the charges were not timely brought and we affirm the defendant’s conviction.
 

 BACKGROUND
 

 Jose Patino (“the victim”) was killed in 1992, but the investigation ran cold until 1999, when a tip from a federal inmate (“the informant”) linked the defendant to the murder. The evidence — consisting principally of the informant’s trial testimony and the defendant’s statement to the police upon his arrest — revealed that the defendant was part of a group that was hired to kill the victim and dispose of his body. The group accomplished its objective. The defendant was charged with first-degree murder and conspiracy to commit first-degree murder. The jury acquitted the defendant of the murder charge, but convicted the defendant of conspiracy to commit first-degree murder.
 

 The defendant moved to dismiss the conviction, arguing that his prosecution was barred by the four-year statute of limitations in effect in February 1992.
 
 *815
 
 § 775.15(2)(a), Fla. Stat. (1991). The trial court granted the motion and vacated the conviction. The State appealed, and this Court reversed.
 
 State v. Calderon,
 
 951 So.2d 1031 (Fla. 3d DCA 2007)
 
 (“Calderon I
 
 ”). In
 
 Calderon I,
 
 this Court held that if the defendant’s case was not time-barred as of October 1, 1996, it was subject to the statutory amendment providing that a felony “that resulted in a death” can be brought at any time.
 
 Id.
 
 at 1035;
 
 see
 
 Ch. 96-145, § 1, at 130, Laws of Fla. (amending section 775.15(1) to provide that “[a] prosecution for a ... felony that resulted in a death may be commenced at any time.”). Thus, this Court remanded the case to the trial court to determine whether the case was time-barred as of October 1, 1996. On remand, the trial court: (1) extended the limitations period by three years due to the defendant’s continuous absence from this state,
 
 see
 
 § 775.15(6), Fla. Stat. (1991); (2) concluded that the case was not time-barred as of October 1, 1996; (3) denied the defendant’s motion; and (4) reinstated the conviction. This appeal followed.
 

 ANALYSIS
 

 1. Issues on Appeal
 

 The defendant concedes on appeal that he was continuously absent from the state during the original limitations period, and thus, the 1996 amendment to section 775.15(1) applies to his conviction for conspiracy to commit first-degree murder if the conspiracy resulted in the death of the victim. The defendant, however, argues that conspiracy is a mere agreement to commit a criminal offense. In the defendant’s view, conspiracy is “a mere crime of words incapable of causing death,” and it cannot satisfy the “resulted in a death” requirement of the amendment to the statute of limitations. Thus, the dispositive issue is whether the defendant was convicted of a felony that resulted in a death.
 

 Before addressing the merits, we briefly address the State’s waiver argument. In
 
 Calderon I,
 
 this Court held that the charges were filed within the applicable statute of limitations if the State could prove that the defendant was continuously absent from the state. After an evidentiary hearing, the trial court found that the defendant was continuously absent from the state, and the defendant does not dispute this finding on appeal. Accordingly, the State contends that the defendant may not now raise an alternative argument regarding the applicability of the 1996 amendment to the statute of limitations. We disagree. The argument raised by the defendant in the instant appeal was raised below, not ruled on by the trial court, not raised or addressed on appeal in
 
 Calderon 1,
 
 and raised by the defendant again on remand. We therefore find that the defendant did not waive his right to rely on the alternative ground for discharge and reversal of the trial court’s order entered on remand.
 
 See State v. Naveira,
 
 873 So.2d 300, 304 (Fla.2004).
 

 2. Conspiracy Exposes the Public to Harmful Results
 

 The defendant views conspiracy as a mere crime of words, which is incapable of resulting in a death. The defendant argues, citing the familiar children’s rhyme, that “[s]ticks and stones may break my bones, but words will never hurt me.” It is true that the object of a conspiracy need not be achieved to be convicted of conspiracy, and this Court has held that the crime of conspiracy may be comprised of the “mere express or implied agreement of two or more persons to commit a criminal offense.”
 
 Jimenez v. State,
 
 715 So.2d 1038, 1040 (Fla. 3d DCA 1998). Nevertheless, a conspiracy sometimes does result in
 
 *816
 
 the death of the intended victim, members of the conspiracy, or an unidentified victim.
 

 Across the country, legislatures have enacted laws to punish those who enter into conspiracies to commit crimes, because such agreements involve real, undeniable risks. The relative ease with which a defendant may be convicted for this offense, however, does not diminish the severity of the crime or suggest that it has limited consequences. Instead, it is precisely because the dangers inherent to a conspiracy are so great that a conviction may be obtained with such relative ease. The following quotation from the United States Supreme Court is pertinent to this discussion:
 

 [C]ollective criminal agreement-partnership in crime-presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.
 

 Callanan v. United States,
 
 364 U.S. 587, 593-94, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961);
 
 see also Castro v. State,
 
 939 So.2d 306, 310-11 (Fla. 4th DCA 2006) (noting increase in public danger caused by group criminal activity).
 

 Thus, we reject the innocuous view of the crime of conspiracy suggested by the defendant. We re-emphasize that the “mere” act of the formation of an agreement to commit a crime is punished separately because when criminal minds act in concert, the public is exposed to a wide range of dangerous results.
 

 3. Death is a Potential Result of Any Conspiracy
 

 In this case, the defendant, the informant, and at least two others agreed to join together, pool their resources, and kill the victim to obtain a monetary award. The object of the conspiracy was the death of the victim. However, the general public, in addition to the victim, was exposed to an obvious risk of death as a direct result of the group’s agreement.
 

 It is easy to imagine numerous scenarios in which members of the public other than the victim could be killed as a result of a secret agreement to gather weapons, locate and track the victim, kill the victim, and dispose of his body without being discovered. An unknown third party could stand between the killer and the victim. Mistaken identity could result in the death of an innocent party. An innocent bystander could be felled by a stray bullet. A firearm could accidentally discharge. A neighbor or police officer could discover the scheme and be killed as a result of the conspiracy. The possibilities are endless.
 

 Death is a potential outcome of any conspiracy, even those where death is not the intended result. Federal law is replete with examples.
 
 See United States v. Harris,
 
 701 F.2d 1095, 1101 (4th Cir.1983) (noting that death resulted from conspiracy to violate rights of certain laborers to be free from slavery although death was not intended result);
 
 United States v. Guillette,
 
 547 F.2d 743, 748-19 (2d Cir.
 
 *817
 
 1976) (concluding that death resulted from conspiracy to deprive witness of right to testify where witness accidentally killed himself with bomb intended to injure the conspirators who were known to witness);
 
 United States v. Lewis,
 
 644 F.Supp. 1391, 1406 (W.D.Mich.1986) (finding that regardless of defendants’ intent, conspiracy to hold victims to involuntary servitude resulted in death). In short, when individuals put their minds together to achieve criminal ends, regardless of the conspirators’ intent, people die, and those deaths can be said to be a result of the conspiracy.
 
 [1]
 

 4. The Instant Conspiracy Resulted in a Death
 

 Unlike the conspiracies involved in the federal cases cited above, the goal of this conspiracy was the death of the victim. Because the death of the victim was the specific goal of the co-conspirators, their agreement heightened the danger to the public and the victim. And of course, in this case, the goal of the conspiracy, the victim’s death, was attained.
 

 As with most conspiracies, the very agreement to work together to kill the victim, provided the co-conspirators with an increase in manpower, an increase in the capacity to plan, and an increase in resources. In theory, this group dynamic astronomically raised the chances that their objective would be attained (the victim would be killed), no one would back out of the plan, and if someone did back out, he would be replaced.
 
 See Callanan,
 
 364 U.S. at 593-94, 81 S.Ct. 321. In the instant case, the defendant and his co-conspirators devised and executed a complex and successful plan. As a consequence of the group’s concerted action, the victim was killed, and the co-conspirators escaped the attention of the authorities.
 

 Accordingly, we reject the defendant’s argument that his acquittal on the substantive murder charge prevents a finding that the conspiracy resulted in a death. The defendant and his co-conspirators conspired to kill the victim and the victim was murdered as a result of the conspiracy. The fact that the defendant was acquitted of the charge of participating in the actual murder does not negate his participation in the plan to take the victim’s life. This conclusion is not without precedent.
 

 In
 
 United States v. Aller,
 
 384 Fed.Appx. 34, 35-36 (2d Cir.2010), Kevin Aller (“Alter”) was convicted on charges of RICO conspiracy, narcotics conspiracy, and conspiracy to commit murder in aid of racketeering.
 
 Id.
 
 at 35. Alter was also charged with, but acquitted of, the substantive charge of murder.
 
 Id.
 
 at 36. The sentencing judge increased Aller’s base offense level based on a finding that the conviction for conspiracy to commit murder “resulted in the death of a victim.”
 
 Id.
 
 Alter argued that the sentencing judge erred in finding that the conspiracy resulted in a death because he was acquitted of the underlying murder.
 
 Id.
 
 The Second Circuit held that Aller’s argument was “unavailing,” and that for the purposes of enhanced sentencing, the judge properly relied on the fact that the conspiracy resulted in the victim’s death.
 
 Id.
 

 We agree with the Second Circuit. The evidence in this case leaves no doubt that
 
 *818
 
 the defendant was part of a concerted plan to murder the victim and dispose of his body. The conspiracy heightened the chances of the criminal design’s success, as well as the danger of injury and death to the victim and to the public at large. While the public was spared on this occasion, the victim was not, and thus, the instant conspiracy resulted in a death.
 

 5. The Instant Conspiracy Falls Under the Amended Statute of Limitations
 

 The final question to be resolved is whether this conspiracy to commit first-degree murder “resulted in a death” for the purposes of the amended statute of limitations providing that such prosecutions may be brought “at any time.” Ch. 96-145, § 1, at 130, Laws of Fla.;
 
 see
 
 § 775.15(l)(a), Fla. Stat. (2000) (providing, as amended, that prosecution for felony resulting in death may be commenced “at any time”). We hold that a conspiracy to commit first-degree murder can result in death, and in such situations, the co-conspirators are subject to prosecution at any time.
 

 We begin our analysis of section 775.15(l)(a) with consideration of its plain meaning.
 
 See Fla. Birth-Related Neuro. Injury Comp. Ass’n v. Dep’t of Admin. Hearings,
 
 29 So.3d 992, 997 (Fla.2010);
 
 State v. Cohen,
 
 696 So.2d 435, 438 (Fla. 4th DCA 1997). When used in conjunction with the word, “in,” the verb “result” simply means “[t]o end in a particular way.”
 
 The American Heritage Dictionary of the English Language
 
 1109 (1979 ed.). Death is a requirement for the purposes of the amended statute, and thus death was the “particular way” in which the conspiracy had to end for the amended statute to apply. Here, that requirement was met when the conspiracy to commit first-degree murder ended in the victim’s death. Accordingly, the instant conspiracy resulted in a death, and falls within the purview of section 775.15(l)(a), as amended.
 

 Finding the language of that section clear and unambiguous, there is no need to apply any other means of statutory construction.
 
 Fla. Birth-Related Neuro. Injury Comp. Ass’n,
 
 29 So.3d at 997. However, and although it is not necessary to our conclusion, we find persuasive a portion of the Second Circuit’s decision in
 
 United States v. Guillette,
 
 547 F.2d at 748-49.
 

 In
 
 Guillette,
 
 the court interpreted a sentencing provision providing for life imprisonment “if death results from a prohibited conspiracy.”
 
 Id.
 
 at 748. The defendants challenged their conspiracy convictions, in part, because the trial court refused to provide a jury instruction stating that death cannot result from a conspiracy where the death was accidental, or the jury finds beyond a reasonable doubt that the death was not deliberate.
 
 Id.
 
 The Second Circuit rejected the narrow, direct causation view of the phrase “if death results” argued by the defendants.
 
 Id.
 
 at 749. Specifically, the court held:
 

 We find the principle of proximate cause embodied in [the sentencing provision] through the phrase “if death results.” .... To confine the meaning of “result” to • direct causation not only would be at odds with common law principles of legal causation but also would seriously impair the effectiveness of [the sentencing provision].
 

 Id.
 

 We agree with the Second Circuit’s analysis. Our legislature deliberately chose to remove the limitations period from “any felony,”
 
 House of Representatives Committee on Criminal Justice Analysis & Financial Impact Statement,
 
 CS/HB 23 (Fla. May 20, 1996), “that resulted in a death,” rather than limiting its application to those felonies where death is an element of the crime charged. Ch. 96-145, § 1, at 130, Laws of Fla. We must conclude that the legislature was aware of the breadth of
 
 *819
 
 these phrases, and we must give those phrases full effect. Because the instant conspiracy to commit first-degree murder is a felony that resulted in a death, the amended language of section 775.15(l)(a) applies to the defendant’s prosecution.
 

 CONCLUSION
 

 Conspiracy to commit first-degree murder is itself a serious crime, separate from the underlying substantive offense. This conspiracy carried with it a host of potentially harmful results. Among those results, without question, was death. Here, the victim’s death was the object of the conspiracy in which the defendant was involved. Due in no small part to the concerted actions of the group, the instant conspiracy achieved its criminal objective. Thus, for the purposes of section 775.15(l)(a), as amended, the instant conspiracy resulted in a death.
 

 We therefore find that the State’s prosecution of the defendant was not barred by the statute of limitations. We do not address the remaining arguments raised by the defendant on appeal as they were either abandoned by the defendant at oral argument, or are without merit.
 

 Affirmed.
 

 [1]
 

 . Of course, we recognize that every conspiracy does not result in a death. In fact, Florida's case law includes a number of examples of convictions for conspiracy to commit first-degree murder that did not involve any death.
 
 See Samuels v. State,
 
 11 So.3d 413, 415 (Fla. 4th DCA 2009);
 
 Castro v. State,
 
 939 So.2d 306, 308 (Fla. 4th DCA 2006);
 
 Johnson v. State,
 
 799 So.2d 387, 387-88 (Fla. 4th DCA 2001);
 
 State v. Spioch,
 
 706 So.2d 32, 33-34 (Fla. 5th DCA 1998).