# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 02-2241

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WEI MIN SHI,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:01-CR-146—**Rudy Lozano**, *Judge.*

ARGUED DECEMBER 2, 2002—DECIDED JANUARY 22, 2003

Before BAUER, POSNER, and ROVNER, *Circuit Judges.*

POSNER, *Circuit Judge.*    The defendant, Wei Min Shi, appeals from his conviction and sentence for having conspired with Hai Dong Yu, in violation of 18 U.S.C. § 1028(f), to violate 18 U.S.C. §§ 1028(a)(2) and (a)(6), which respectively make it a crime to transfer, and to possess, a false identification document that appears to have been issued under the authority of the U.S. government. Shi was also convicted of possessing a counterfeit U.S. immigration stamp, in violation of 18 U.S.C. § 1028(a)(5), but he has not appealed that conviction.

The document in question is an "I-94," a form that an alien who wants to obtain a nonimmigrant visa is required to fill

out. Yu, a Chinese, had filled out such a form in Chinese and obtained a visa and come to the United States. He wanted a state identification card and learned that Shi could help him get one. They met in Chicago, and Shi agreed for $100 to help Yu get such a card. He drove Yu to the Indiana motor vehicle bureau in Crown Point, Indiana, which issues identification cards to immigrants residing in Indiana. Had Yu's I-94 been in English, he could have obtained the card; but it was not. Shi took a blank I-94 form from a sheaf of such forms that he had on hand, together with stamps and other paraphernalia required to create a credible forgery, and forged on the spot an I-94 for Yu that contained the same information as Yu's legitimate form but was in English. The forgery was spotted when Shi and Yu presented the forged I-94 to the motor vehicle bureau.

There is no question that Shi violated substantive provisions of 18 U.S.C. § 1028, not only by possessing a counterfeit stamp but also by possessing and transferring to Yu a false identification document purported to be issued under the authority of the United States, and that Yu committed the possession offense (to which he pleaded guilty). But what was the conspiracy? Shi was engaged in an illegal business of selling phony documentation to aliens. Yu was one of his customers. The prohibition of possessing and transferring these phony documents is symmetrical with the prohibition of possessing and selling illegal drugs, and an illegal sale of drugs, though made pursuant to an agreement express or implied, is not a conspiracy to make the sale, *United States v. Lechuga*, 994 F.2d 346, 348-50 (7th Cir. 1993) (en banc) (plurality opinion); *United States v. Thomas*, 284 F.3d 746, 751-52 (7th Cir. 2002); *United States v. Sanchez*, 251 F.3d 598, 601 (7th Cir. 2001); *United States v. Lennick*, 18 F.3d 814, 819-20 and nn. 4-5 (9th Cir. 1994); see also *United States v. Boyle*, 482 F.2d 755, 767 (D.C. Cir. 1973), or to possess the item sold.

Conspiracies are punished separately from single-offender criminal acts, and often as severely even if the conspiracy fails to achieve its aim, because a group having some illegal purpose is more dangerous than an individual who has the same purpose. *Callanan v. United States*, 364 U.S. 587, 593 (1961); *Krulewitch v. United States*, 336 U.S. 440, 448-49 (1949) (Jackson, J., concurring). They are more dangerous not only because there is more power for harm in a group and hence a greater likelihood that the group will achieve its criminal aim, but also because a group can take advantage of the division of labor, parceling out tasks in accordance with the skills, preferences, and experience of the individual members, thus enabling it to operate on a larger scale, and conceal its criminal activities more effectively, that would be possible for a lone wolf. *United States v. Manzella*, 791 F.2d 1263, 1265 (7th Cir. 1986). A seller and a buyer do not compose a "group" in the sense relevant to conspiracy law, because they do not have a common aim; they act at arm's length rather than cooperatively, each trying to get the better of the deal. Shi's aim was to obtain $100 for furnishing Yu with a forged document; Yu's to use the document to obtain an Indiana ID. They did not seek joint possession, or have any other common object, without which there is no conspiracy. *United States v. Mojica*, 185 F.3d 780, 786-87 (7th Cir. 1999); *United States v. Magana*, 118 F.3d 1173, 1185-86 (7th Cir. 1997); *United States v. Paters*, 16 F.3d 188, 190-91 (7th Cir. 1994); *United States v. Fox*, 902 F.2d 1508, 1514-15 (10th Cir. 1990).

And anything that would make a sale more ominous than another kind of crime (perhaps the fact that voluntary transactions are more difficult to detect than crimes with readily identifiable, indignant victims) would be reflected in the punishment for the sale. To punish it more severely as conspiracy would be an egregious example

of redundant punishment. Put differently, since the agreement is inherent in the sale, calling it a conspiracy merely relabels the sale rather than identifying an added source of menace warranting punishment.

The government more or less acknowledges what we have said so far but argues that Shi and Yu were conspiring not merely to furnish Yu with a phony I-94 but by doing so to enable him to commit a further crime, namely to extract from the Indiana motor vehicle bureau a state identification card without furnishing the bureau with proper documentation. And since Yu did not live in Indiana, he was not entitled to an Indiana identification card in any event. In other words, Shi and Yu were agreeing to obtain an identification card from the bureau of motor vehicles illegally. This is a plausible characterization of their conduct, and had they been charged with conspiring to defraud the motor vehicle bureau they might well have been found guilty. But they were not charged with conspiring to commit any offense, state or federal, against the bureau. They were charged with conspiring, that is, agreeing, to violate section 1028 of the federal criminal code, specifically the provisions of that section that forbid the transfer and possession of (so far as bears on this case) a forged I-94. If *A* agrees to sell a gun to *B* for use against *C*, *A* and *B* are guilty of conspiring against *C*. They are not guilty of conspiring to transfer the gun from *A* to *B*.

The conviction of conspiracy thus has to be reversed and the case remanded for resentencing on the section 1028(a)(5) count. Shi argues that the guideline applicable to that count is U.S.S.G. § 2B1.1 ("forgery; offenses involving altered or counterfeit instruments other than counterfeit bearer obligations of the United States)." The government argues that it is section 2L2.1 ("trafficking in a document relating to naturalization, citizenship, or legal

resident status, or a United States passport"). The government is correct. See *United States v. Kuku*, 129 F.3d 1435, 1439-40 (11th Cir. 1997) (per curiam). Section 2L2.1 describes Shi's conduct to a T, whereas 2B1.1 is applicable to forgeries generally. An application note to section 2B1.1, moreover, instructs that "if the primary purpose of the offense, under 18 U.S.C. § 1028, was to violate, or assist another to violate, the law pertaining to naturalization, citizenship, or legal resident status, apply § 2L2.1 . . . rather than this guideline." § 2B1.1, Application Note 7(B). Granted, there is no evidence that Yu wanted the forged I-94 in order to violate the immigration laws or that Shi had any intention of facilitating such a violation; no doubt he was indifferent to the purpose for which Yu wanted the Indiana ID that a forged I-94 might enable him to obtain. But the immediate purpose of the offense was to violate a law pertaining to legal resident status, for that is what the law requiring foreign visitors, such as Yu, to fill out an I-94 form is.

With the conspiracy count gone, however, there is no basis for enhancing Shi's sentence for a leadership role in the offense on the basis that he was the leader of the conspiracy, which he was; but it was a conspiracy to defraud the motor vehicle bureau, which was not a crime with which he was charged. The only offense of which he stands lawfully convicted is the possession of the counterfeit stamp, a one-man offense. We need not decide whether a leadership enhancement might be appropriate on the basis of relevant conduct consisting of an uncharged conspiracy to defraud the motor vehicle bureau.

REVERSED AND REMANDED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*