**UNITED STATES of America**

v.

**Ahmed Mahamed Helmy MOSTAFA EL SAKAAN, Defendant.**

No. CR. 3:03CR088–01.

United States District Court, E.D. Virginia, Richmond Division.

Sept. 9, 2003.

Raul Novo, Midlothian, VA, for Defendant.

David Thomas Maguire, Stephen David Schiller, Office of the U.S. Attorney, Richmond, VA, for United States of America.

### *MEMORANDUM OPINION*

### (Government Objection to the Presentence Investigation Report)

HUDSON, District Judge.

THIS MATTER was before the Court on August 29, 2003 for the sentencing of the Defendant Ahmed El Sakaan ("El Sakaan" or "Ahmed"). During the hearing, the Court heard evidence and oral argument with respect to the Government's Objections to the Presentence Report, which had previously been briefed by both parties. Based on the reasons set forth on the record and in the attached Memorandum Opinion, the Court SUSTAINS the Government's objection to the Probation Officer's calculations of the guidelines under the United States Sentencing Guidelines ("U.S.S.G.") § 2B1.1 (" § 2B1.1") and, instead, sentences the defendant under U.S.S.G. § 2L2.2 (" § 2L2.2").

### I. Factual Background

On April 24, 2003, El Sakaan pled guilty to one count of conspiring to produce and cause the production of identification documents, in violation of 18 U.S.C. § 1028(f), and two counts of aiding and abetting in identification fraud, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 1028(a)(1). According to the Statement of Facts adopted by the defendant at the time of the plea hearing, from about March of 2000 until March of 2003, El Sakaan and his brother, Hatem El Sakaan, unlawfully, knowingly, and intentionally conspired with one another and with other persons to knowingly and unlawfully produce and cause the production of various identification documents. Specifically, on March 9, 2000, in Richmond, Virginia, each defendant knowingly and willfully caused representatives of the Virginia Department of Motor Vehicles ("DMV") to produce a Virginia Identification Card by fraudulently stating that his residence was 2201 Ridgefield Greenway, Richmond, Virginia, 23233. Thereafter, on June 27, 2000, using the name "Mohamed Ahmed Elsakaan," Ahmed again caused representatives of the DMV to produce a Virginia Identification Card, this time in the name of "Kadir Karakoca Yeter," who also fictitiously resided at 2201 Ridgefield Greenway, in Richmond, Virginia.

During the Government's presentation of evidence, DMV Special Agent Daniel Kelly ("Kelly") testified at length about his investigation into the approximately fifty-three (53) or so identification cards, instructional permits and operator's licenses issued by the Virginia DMV between 1998 and 2003 to the 2201 Ridgefield Greenway address. According to the results of his investigation, it appears that the majority of individuals who falsely used that address were illegal aliens, living outside the Commonwealth of Virginia, who had discovered that it was almost effortless to fraudulently obtain Virginia DMV documentation. Several of those who have since been detained, including the defendant, told Kelly that they needed the documentation in order to secure employment because they could not otherwise have obtained employment due to their immigration status.

### II. Government's Objection to the Probation Officer's Use of U.S.S.G. § 2B1.1

On the date this case was first set for sentencing, the Government realized, apparently for the first time, that the Probation Officer had amended the guidelines section under which El Sakaan's guidelines were calculated in the initial version of the presentence report. The officer originally

calculated the guidelines under § 2L2.2, the section relating to false documentation and false personation by an alien.[1] At some time prior to the hearing, however, the Probation Officer decided to recalculate the guidelines employing § 2B1.1, the general fraud section. In order to determine which guideline section is appropriate, the Court continued the sentencing hearing and allowed the parties to brief the issue. In the ensuing memoranda, the Government continued to maintain that § 2L2.2 more accurately reflected the defendant's criminal conduct. The defendant, on the other hand, urged the Court to rely on § 2B1.1 to determine the base offense level.

According to Appendix A to the United States Sentencing Guidelines, because the defendant pled guilty to conspiracy to commit identification fraud in violation of 18 U.S.C. § 1028, the Court may apply U.S.S.G. §§ 2B1.1, 2L2.1, or 2L2.2, depending upon the individual facts of the case. In analyzing the three options, the Court must first determine, on a case-by-case basis, the defendant's primary objective in committing the fraud. If the primary purpose of the fraud, under 18 U.S.C. § 1028, was to violate or assist another to violate the law pertaining to naturalization, citizenship, or legal resident status, the Court is instructed to apply § 2L2.1 (trafficking in documents relating to naturalization) or § 2L2.2. *See* U.S.S.G. § 2B1.1, Application Note 7(B). In the context of the immediate case, therefore, the issue for this Court to decide is whether the true object of the defendants' conspiracy was merely to defraud the DMV, as El Sakaan contends, or to defraud the DMV for the purpose of evading the immigration laws, as the Government urges.

In support of its position, the Government points out that the defendant is an illegal alien who overstayed his visa. In order to travel, maintain employment, and provide himself with identification to use in New Jersey, he obtained multiple false identification documents in Virginia. El Sakaan did so, the Government argues, because immigration law requires documentation in order to gain lawful employment and because New Jersey law would not have allowed him to secure such documentation without being detected and, perhaps, detained. According to the Government, El Sakaan came to Virginia for the primary purpose of evading disclosure of his immigration status and related laws that surely would have hindered his employment prospects.

Additionally, according to the Government, the defendant engaged in the business of assisting other illegal aliens with the acquisition of false Virginia identification cards. Like the Seventh Circuit case of *United States v. Shi*, 317 F.3d 715 (7th Cir.2003) (holding that use of § 2L2.1 was appropriate where the defendant accepted $100 and transported another illegal alien to obtain an identification card from the Indiana Motor Vehicle Bureau) and the Eleventh Circuit case of *United States v. Kuku*, 129 F.3d 1435 (11th Cir.1997) (holding that the district court erred in applying § 2F1.1, the precursor to § 2B1.1, where the defendant, working as a Social Security Administration service representative, produced and sold false social security cards to illegal aliens), the Government argues that the facts of the immediate case support the application of § 2L2.1.

Applying the language of *Kuku* to the case before the Court, the Government

---

1. According to the Government, this Court has used § 2L2.2 to sentence more than ten other defendants who also fraudulently and unlawfully used the Ridgefield Greenway address.

argues that (1) the language of § 2L2.2 better describes the defendant's conduct; (2) the language of § 2L2.2 more accurately describes offense conduct similar to that of the defendant; and (3) the method of sentence enhancement provided by § 2B1.1 (based on the amount of loss suffered) is awkward when applied to the immediate circumstances. Thus, in the Government's opinion, § 2B1.1 is not designed to cover the facts of this case.

In response, El Sakaan argues that § 2B1.1 is appropriate because the Government cannot prove that he intended to defraud the Immigration and Naturalization Service ("INS"). To the contrary, Ahmed argues, before he came to Virginia to obtain the identification card, he had already applied for his "green card" in New Jersey. Moreover, according to another defendant also convicted in this Court, El Sayed Rashwan, although Ahmed traveled with Rashwan from New Jersey to the Virginia DMV, Rashwan paid Ahmed no money. *See United States v. Rashwan,* 328 F.3d 160 (4th Cir.2003). Finally, Ahmed contends, he paid someone *else* $300 to get his identification card, and the aliases he is alleged to have used are all variations of his own name. In sum, El Sakaan argues that the Probation Officer chose to use the general fraud guideline because there is no shred of evidence from which the Court can infer that he obtained the documentation for the purpose of circumventing immigration law.

In this Court's opinion, the language of the general fraud section, § 2B1.1, is inapplicable when considered in the context of the immediate case. Here, in the light most favorable to the defendant, it appears that the object of his conspiratorial conduct was to secure employment. That, in and of itself, is an attempt to evade INS laws.[2] Clearly, El Sakaan could not have worked legally because of his immigration status. Thus, regardless of whether the defendant was involved in a large-scale scheme to help others obtain false documents from the DMV in Virginia, it is reasonable to infer that he obtained his own documents in order to defeat immigration laws. Thus, according to the facts of this case, the Court finds that § 2L2.2 best embodies the defendant's conduct and is therefore the more appropriate section for determining El Sakaan's guidelines. The Government's objection, therefore, is sustained.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

**2.** 18 U.S.C. § 1546(b) makes it a felony to use an identification document, knowing that the document is false, for the purpose of satisfying a requirement of section 274A(b) of the Immigration and Nationality Act [8 U.S.C. § 1324a (b)]. Section 274A(b) of the Immigration and Nationality Act requires an employer to verify each job applicant's attestation that he or she is authorized to work lawfully in this country. To do so, an appli- cant may provide the employer with a document establishing his employment authorization (like a work visa or social security card) in combination with any document establishing his identity. 8 U.S.C. § 1324a (b)(1). Specifically, the applicant can establish his or her identity by showing a state driver's license or identification card that includes a photograph. *Id.*